# JOSHUA G. CLARK et al. v. HORNTHAL and BLAKEMORE et al.

1. REMEDIES.—At common law only the personal estate of a deceased person was liable to be taken in satisfaction of simple contract debts. Only debts by specialty or by matter of record could reach the realty. But this was changed in England by Stat. 3 and 4 Wm. IV, ch. 104, which makes real estate assets also for the payment of debts. And in this country, by statute in all the states, real estate becomes assets for the payment of debts whenever the personal estate is insufficient for their payment. Per PEYTON, C. J.

2. EXECUTORS—WILLS—POWERS.—If a will gives a power of sale to pay *debts or legacies,* or *for distribution,* without stating by whom the sale shall be made, the power will devolve in the executor by implication. Per CURIAM.

3. SAME—JURISDICTION—TRUSTS.—If a testator order his realty sold to pay *debts,* without saying who should sell, a trust would be thereby created, and a court of equity would declare the proper party to execute it to be the executors, if any are named, and if not, the court would execute the trust by its own authority. Per CURIAM.

4. WILLS—EXECUTORS.—The will is the executor's law, and he, the testator's representative ; and he must therefore pursue all the lawful requirements of the will with reasonable strictness. Per CURIAM.

5. SAME—POWERS—ESTATES.—A direction in a will that the executors shall sell lands for the payment of debts, unaccompanied by a devise to them, confers only a power and not an estate ; and until executed, the land descends to the heir. Hawk. on Wills, 152 ; 8 Ad. & Ell. 905. PEYTON, C. J.

6. TRUSTS—SURVIVORSHIP.—If a power be given to two or more persons by name, with no words of survivorship, and one die or refuse to act, the other cannot execute the power ; Perry on Trusts, 447 ; and especially if judgment and discretion are to be exercised. Tiff. & Bull. on Trusts, etc., 759. PEYTON, C. J.

7. POWERS.—Naked powers and powers coupled with interests defined and distinguished, per PEYTON, C. J.

8. TRUSTS—POWERS—CONCURRENCE OF CO-TRUSTEES—INNOCENT PURCHASERS—IMPROVEMENTS.—Where a power is given to several persons, to be exercised on such terms and conditions as they may deem most beneficial, the exercise of the power so given, without the concurrence of all who accept the trust, is a violation of the trust; and a sale so made confers no title. But in such case, if the sale was made in mutual good faith, the innocent purchaser will have an equitable lien on the premises, for the money paid by him in the purchase and in such improvements as shall have enhanced its value, with interest. PEYTON, C. J.

9. IMPROVEMENTS BY BONA FIDE PURCHASER.—Courts of equity will allow compensation for improvements made by innocent purchasers under titles apparently good; and the measure of such compensation will be determined by the increase in the vendible value of the property arising from such improvements. PEYTON, C. J.

10. EXECUTORS—MISSISSIPPI STATUTE.—The statute (Code of 1857, p. 458, art. 136), which requires that "whenever any last will and testament shall empower and direct the executor as to the sale of property, the payment of debts and legacies, and the management of the estate, the directions of the will shall be followed, and no provision of the statute shall so operate as to require the executor to pursue a different course from that described in the will, if it be lawful," is correct in principle. Currie and Naylor, Exrs., etc. v. Murphy et. al., 35 Miss. 473. Per TARBELL, J.

11. WILLS—POLICY OF MODERN LEGISLATION.—The policy of modern legislation is to dispense with the fictions and technicalities of the feudal system; to prevent the accumulation of estates to the extent formerly allowed; to render more simple the disposition and transmission of property, and to protect the rights of creditors. If there be one feature more distinct than another, it is the right of the owner of property to the absolute disposition of his property, subject only to the just claims of his creditors. TARBELL, J.

12. CONSTRUCTION OF WILLS.—The rules of construction applicable to wills remain unchanged by the statutes, which subject both realty and personalty to the decedent's debts. TARBELL, J.

13. CASE AT BAR.—The testator appointed his wife sole executrix, and devised real estate to her for life, with remainder to his heirs, with power in her, however, to sell at any time during her life, and invest proceeds in other property, to be enjoyed by her for life, with remainder in like manner to his heirs; the sale, if made, to be "upon such terms and conditions as she might deem most advantageous." The will nominated two persons to succeed the widow as executors at her death, and in case she should die without selling the real estate, they were authorized, in like manner as she had been, to sell it "upon such terms and conditions as they might deem most beneficial," and invest the proceeds to be divided as the other property. The wife died without selling the estate. One of the persons nominated in the will as her successors as executors having qualified, and the other who had declined the trust and refused to qualify, sold and conveyed the premises to pay debts. The chancellor having refused, at the suit of the heirs, on this state of facts, to set aside the sale, and SIMRALL, J., having been of counsel in the court below, PEYTON, C. J., was of opinion that the decree of the chancellor should be reversed, and TARBELL, J., that it should be affirmed.

APPEAL from the chancery court of Warren county. HILL, Chancellor.

The opinions of PEYTON, C. J., and TARBELL, J., contain a full statement of the case.

*Yergers & Nugent,* for appellants.

1. Had the executors, Lane and Lum, power under the will, if both had qualified as executors, to make this sale, for the purpose of paying debts?

2. Is a sale valid, when only one executor had qualified, although both joined in the deed?

1. The demurrer admits the allegation, that the sale was made to pay the debts of the testator, and not to reinvest in other property, for the use of the children, and that this fact was known to the purchasers, and that the proceeds of the sale were used in part in the payment of debts, and that no part has been invested in other property for the children.

The power of sale given to the executors by the 6th and 7th clauses of the will, did not authorize the executors to make this sale. The power of sale given by these two clauses, was only to sell when deemed most beneficial to the estate, and "to invest the proceeds in lands and negroes, to be divided" among his children, and for their use and benefit. It was not a power to sell generally, but only to sell for a specific purpose. It gave no authority to sell for any other purpose, and a sale for the payment of debts, and not for investment, was unauthorized and simply void for want of power.

In the construction of powers, the intention of the parties, if compatible with law, must govern, and the intention is to be determined from the instrument creating the power. 42 Miss. 77. In that case it was held "that where power was given to appoint a new trustee, where the original trustee neglected or refused to act, such power could not be exercised and a new trustee appointed, where, in consequence of the death of the original trustee, he could not act. His death was not equivalent to a neglect or refusal to act."

In Hill on Trustees, 342, it is said, that "in expounding trusts by deed or will, the intention of parties is to be pursued. The same rule applies to each."

It is a general rule that powers granted for one purpose cannot be executed for another. They must always be executed for the purpose and in the manner designated by the grantor, and in order to carry into effect his intentions. And a power to sell, given by general words, may be limited as to the time in which it may be exercised, by directions as to the application of the purchase money. Clark v. Campbell, 2 Rawle, 215; Jackson v. Jansen, 6 Johns. 73; Shapestein v. Tillon, 3 Cow. 651.

So, too, it has been held, that under a power in a will to sell land to pay legacies, the executor cannot sell to pay debts. Harman v. Spear, 2 Dall. 291; 1 Yeates,

553. See also 1 Rawle, 377, and Hite v. Taylor, 3 A. K. Marsh. 353. Nor can a discretionary power be exercised after its object has ceased. Slocum v. Slocum, 4 Edw. Ch. 613.

A power to locate and survey will not authorize a sale. Moore v. Sackett, 2 Bibb, 69 ; see Clark v. Riddle, 11 S. & M. 311.

So, too, a power to sell in a deed of trust for payment of debts can only be exercised under the circumstances pointed out by the deed. Walker v. Brungard, 13 S. & M. 723 ; see also Monday v. Vouter, 3 Gratt. 518.

And a power to sell, given to an executor *virtute officii,* becomes inoperative when the estate is settled, or all claims are presumptively barred by lapse of time, or where no object remains to be accomplished, or the object has become impossible. In this view, the purposes of the testator must be ascertained from the whole will, and the objects of the power must be considered in connection with the power itself. Hill on Trustees, 719, note 1 ; 6 Johns. 73 ; 3 Cow. 651 ; 22 Ohio, 241 ; 1 De G., Mac. & G. 635 ; 1 Barb. Eq. 240.

If the power of sale is conditional, it is not well executed, but on the happening or performance of the condition. 2 Sug. on Pow. 473–474, and cases cited.

A power to an executor to sell and re-invest for the use of a particular person, is a conditional power. The law will imply the condition, that the sale shall only be made on condition that the money be invested as directed in the will, and that the sale shall only be made for that purpose.

It is a general rule, that where a power of sale is given to trustees, generally, for payment of debts or of re-investment, a *bona fide* purchaser is not bound to see to the application of the purchase money. But if there be collusion, or the purchaser has notice that the sale is unnecessary or out of the line of the trust, he is

liable in all cases. Potter v. Gardner, 12 Wheat. 498; Garnett v. Macon, 6 Cal. 361; Redheimer v. Pyron, 1 Spear Eq. 141; Hill on Trustees, 166, note 2. And it is sufficient if the circumstances are of a character to put a purchaser upon inquiry. Hill on Trustees, 166, note 2. If a party is put upon inquiry, he is chargeable with knowledge of the facts to which the inquiry would lead. Parker v. Foy & Florer, 43 Miss. 266.

But the chancellor, in deciding this case in the court below, and the counsel who now seeks to sustain his opinion, do not seem to rely upon, and may, in fact, be considered to have abandoned, the position, that this deed to the defendant can be supported upon the express power of sale conferred by the fifth and sixth clauses of the will. This they were compelled to do. For the bill states distinctly, that the sale was not made for the purpose contemplated by the testator in these clauses, but for an entirely different purpose. It was not a sale for the purpose of re-investing in other property, in the name and for the use of the testator's children, but was a sale for the purpose of paying debts of the testator.

The chancellor held, and it is insisted upon by the counsel for appellees, that the general expression contained in the second clause of the will, " I wish all my debts paid as soon as possible," conferred upon the executor the power to sell the real estate for the purpose of paying the debts.. This position we deny, and believe that we can show very clearly that these general words would not, in England, have authorized a private sale by the executors; that, at most, they would only have amounted to an implied charge of the debts upon the real estate, authorizing a sale of it to be made by directions of a court of chancery, on the application of creditors or of the executors in the event of a deficiency of personal assets, to discharge the debts.

But even if the expression used in the second clause would have been held by a court of chancery in Eng--

land to confer a power of sale upon the executors, we then can most abundantly show, that under the statute of this state and the uniform practice of our courts, they confer no power of sale, and that lands in this state cannot be sold at private sale by an executor for the purpose of paying debts, unless express power is given for that purpose, or the lands are expressly devised to be sold.

1. It is well known, that by common law, on the death of a party, his personal estate vested in his personal representatives as a fund for the payment of his debts. Hill on Trustees, 499.

This rule of the common law has not been changed here by statute; the personal property of a decedent, still vests in his personal representatives, and constitutes the primary fund for the payment of his debt.

It was also a general rule, both of law and equity, in the absence of statutory regulations, that an executor or administrator had an absolute power of disposal over the whole personal effects of the testator or intestate, and that they could not be followed by creditors, much less by legatees, either general or specific, in the hands of an alienee. The principle on which this was ruled, is, that the executor or administrator, in many instances must sell in order to perform his duty in paying debts, etc., and no one would deal with them if liable afterwards to be called to account. Williams on Executors, 838. But this rule of the common law and of equity has been changed by our statutes, and an executor or administrator, although the title vests in him, cannot sell the personal property of a decedent at private sale or public sale, without an order of court directing it, unless express authority is given in the will. Rev. Code of 1857, art. 80, pp. 443, 445; art. 86, *et seq.*, p. 458; art. 136, p. 458; Cable v. Martin, 1 How. (Miss.) 558; Bainer v. McGee, 1 S. & M. 208; Martin v. Howard, 2 S. & M. 527; Edmondson v. Roberts, 2

How. (Miss.) 822; Hill v. Clark, 14 S. & M. 187; Ware v. Houghton, 41 Miss. 370.

Although our statute charges the personal estate with the payment of debts, and vests the title in the personal representative for that purpose, yet a sale, though made for the payment of debts, without authority of the court, in the manner prescribed by the statute, is a nullity and does not change the title to the property.

This being the rule in reference to the sale of personalty, the question then arises, can an executor or administrator in this state sell the real estate at private sale, under any circumstances, for the payment of debts. This question may be answered absolutely in the negative, so far as the administrator is concerned. As to the executor, we may confidently state the rule to be, that he has no power to sell the real estate for payment of debts, except by order of court, obtained in the manner prescribed by statute, unless there is an express power of sale given in the will, or the lands are expressly devised to be sold, and a mode of sale pointed out therein.

It is well known, that by the common law, the real estate of a decedent was not liable to the payment of his simple contract debts, unless made so liable by the will. From an early period of time, courts of equity sought to subject this species of property to the payment of debts, and to effect that end, in furtherance of natural justice, they seized upon very slight expressions in the will, as evidence of an intention upon the part of a testator to charge his lands with the payment of debts, and construed them a trust for the payment of debts out of the realty, in case of a deficiency of the personalty for that purpose. Still, the personal estate remained the primary fund for the payment of debts, and had to be exhausted before the realty, though charged, could be touched for that purpose. Hill on Trustees, 345; Story Eq. § 1245; 1 Jarm. on Wills,

391; 1 P. Wm. 495; 1 Vern. 94; Hill on Trustees, 345, 346.

But these charges upon the realty, arising from a mere direction by the testator that his debts shall be paid, or even where there is and express direction that the realty shall be sold for the payment of debts, do not vest any title to the land in the executor. At best, they only give a power over the estate for the purposes of the trust.

In Hill on Trustees, the author expresses an opinion that the distinction does not now exist, which he says was formerly taken between the effect of a devise in trust to pay debts, and a mere charge of the debts upon the estate, with regard to the power of the trustees to sell the property; and he says, that although there may be no specific direction for the sale of the estate, but only a trust to raise or to pay debts, or a devise subject to or charged with debts, in all those cases the trustees may properly raise the required amount by sale or mortgage, without waiting for a decree. For such a disposition of the estate is necessary to the due execution of the trust. Hill on Trustees, 355.

If it was intended by the author to assert that an executor has a power of sale which he may exercise without an order of court, where there is only an implied charge of debts upon the realty, which a court of equity raises from the mere expression by the testator in the will that his debts shall be paid, then, we submit that the position is not only not sustained by the authorities cited, but that it is in direct conflict with the adjudications in England and America; and that the doctrine is well established, that a mere implied charge of debts or legacies upon land devised away or descended, will not authorize a sale by the executor without an order of court. Doe v. Huges, 6 Exch. 222; 2 Dev. 284; Shallcrop v. Tinden, 3 Ves. 739.

It would seem to follow, from the express appropria-

tion of real estate as assets to pay debts in this country, in case of a deficiency of personal property for that purpose, and from the careful manner in which the legislature has expressed the mode by which real estate is to be so appropriated, that no resort will ever be entertained to a court of chancery for such a power under a mere implied grant contained in the will, to be collected from the ordinary and generally unmeaning phrases used in wills in this country, in which the draftsman, following forms is English law books, makes the testator declare that all his property shall be, in the first instance, applied to the payment of his debts. In England, where real estate was not assets, generally, for the payment of debts, and could not be applied after the death of a party to the payment of his simple contract debts, without provision to that effect in the will, there may have been a necessity to resort to implication, but even there we have seen that the mere implied trust, by which real estate was held to be appropriated to the payment of debts, did not authorize a private sale of it for that purpose by the executor, but only gave him authority to apply to a court of chancery for an order of sale. To authorize a private sale by the executor to sell real estate to pay debts, required an express power for that purpose, as I have heretofore shown. *A fortiori* in this country, where, in a certain contingency, real estate is made assets and its mode of sale fixed by the statute, which sale is a public sale, no private sale by an executor can be upheld under a mere implied appropriation to the payment of debts by the will, where no express power of sale is given. If the court would hold, in any case, that the mere use of such language as is contained in this, will justify an implied trust to appropriate the real estate to the payment of debts, still such purchase can only be carried out through the medium of the courts by a public sale, unless an express power is given by the will to sell otherwise.

" Choses in action and money of the deceased, or which may have accrued to his estate after his death from the sale of property, real or personal, or otherwise, whether he died testate or intestate, shall be assets, and shall stand chargeable with all the just debts and funeral expenses of the deceased and the expenses of settling the estate; and the lands, tenements and hereditaments of the testator or intestate shall also stand chargeable for the debts over and above what the personal estate may be sufficient to pay, and may be subjected to the payment of debts in the manner hereinafter directed," etc.

The statute then provides for the manner in which personal property shall be sold, when necessary, for the payment of debts by the executor or administrator. It also makes provision for the sale of real estate by the executor or administrator whenever it shall appear that the personal estate is insufficient for the payment of debts. These sales are required in every instance.

The argument thus far has been made mainly with reference to the powers which executors and administrators may exercise over the real estate of decedents according to the principles of common law and the rules of equity as administered in the chancery courts of England.

But our statute law has made many changes in the rules which govern executors and administrators and the performance of their duties, and in nothing has a greater change been made than in the powers which executors and administrators may exercise over real property, which has been made legal assets, and made chargeable for debts when the personal estate was insufficient to pay them, thus rendering utterly useless the resort to implication, which courts of chancery felt constrained to make in order that the whole property, real and personal, of the decedents, might be subjected to his debts.

It is declared in article 80, p. 443, of the Rev. Code

of 1857, that the goods, chattels, personal estate to be public, both of personal and real estate.

Our courts, in construing these statutes, have declared that no sale can be made either by executor or administrator, even of personal property, except in the manner prescribed by law, and that a private sale will not pass title unless express authority is given by the will. Cable v. Martin, 1 How. (Miss.) 558; Barnes v. McGhee, 1 S. & M. 208; Wooten v. Howard, 2 ib. 527; Edmundson v. Roberts, 2 How. (Miss.) 822; Hill v. Clark, 14 S. & M. 187; Ware v. Houghton, 41 Miss. 370; Rev. Code of 1857, p. 443, art. 80, *et seq.;* ib., p. 445, art, 86; ib., p. 458, art. 136.

It will thus be seen that although the legal title to personal property vests in the executor or administrator, a private sale made of it by them is void. How much stronger, then, will the rule be enforced as to real estate where the title vests in the heir, and not in the executor or administrator.

The chancellor, in the opinion delivered by him, placed the power to sell upon the provisions of article 136, p. 458 of the Revised Code. That article is in these words: " Whenever any last will and testament shall empower and direct the executor as to the sale of property, the payment of debts and legacies and the management of the estate, the directions of the will shall be followed by the executor, and no provision herein contained shall so operate as to require the executor to pursue a different course from that prescribed in the will, if it be lawful. And if land be devised to be sold, the sale shall be made and the proper conveyance executed by the executors, or such of them as shall undertake the execution of the will, or by the person appointed by the will to execute the trust."

The only clauses of the will which authorize a sale of the realty, as we read it, are the sixth and seventh. These clauses empower, but do not direct a sale of the

realty, and the authority to sell them is given, not for the purpose of paying debts, but for re-investment. The chancellor does not rely upon the power contained in these clauses, to sustain the sale. But he relies upon the provisions of the second clause, which is in these words : " I wish all my debts to be paid as soon as possible, and, I particularly specify the following." The wish thus expressed, the chancellor says, contains an express power of sale for the payment of debts, and, therefore, the executor, according to article 136 of the Code, was authorized to sell at private sale. To this we reply that the second clause of the will, does not contain any express power to sell, nor does it direct a sale either public or private, nor is it a devise of the land to be sold, but it is at most, according to the decisions uniformly made in England, a mere implied charge upon the realty, which in England is raised by a court of equity, for the purpose of carrying into effect the presumed intention of the testator, to subject all his property, real and personal, to the payment of his debts. See Hill on Trustees, 345, 346. See, also, Bartlett v. Sutherland, 2 Cush. 395, where it is decided that such a provision is not a devise of land to be sold, but only a power or authority to sell.

But even if this were an express power of sale for the payment of debts, it might well be doubted whether, under the provisions of our statute, the executor would have been authorized to sell, except at public sale, in the manner provided by the statute. It is evident, from article 136, that the legislature only contemplated a sale in a different manner from that provided by law, where the will made express provision to that effect; but in this case such a proposition cannot be maintained. If, under this clause, the executor had power to sell the real estate, he had an equal power to sell the personal estate at private sale; and if the language in this case is construed to give such power, we venture

to affirm that there had been no will made in this state, in which it would be necessary to apply to the probate court for an order to sell either the realty or personalty. For every will which we have ever seen in the state, contains the general and formal expression of a wish that the testator's debts should be paid, and no lawyer has had the hardihood before this case, to assert that these words gave any power to the exeĉutor to sell either realty or personalty at private sale. If we concede that the second clause in the will constitutes an implied trust which a court of equity would enforce in order to carry into effect the presumed intention of the testator, yet, as this trust arises only by implication, it may be rebutted by facts appearing in other parts of the will, inconsistent with the intention on the part of the testator to create such trust. Hill on Trustees, *supra.*

It may also be rebutted by circumstances outside the will, such as the condition of the testator's property, and the small proportion of his debts to his personal estate, thus rendering it unnecessary to resort to implication of an intention on his part to create a trust to pay debts out of the reality, when it is manifest from the whole will that he not only considered his personalty sufficient to pay his debts, and, therefore, no necessity to resort to land, but actually made provision for investing the annual surplus of money which he supposed would belong to his estate in the purchase of other property.

In looking at the will, it will be seen that the testator provided by the fourth clause, that the annual surplus of money, after paying the current expenses of his estate, and the maintenance of his wife and children, should be invested by his executrix in the purchase of land and negroes.

This provision is inconsistent with the idea that the testator had in view the possibility of any necessity ever arising to sell his lands for the payment of his

debts, and as he could not, therefore, suppose that there would ever be any necessity to use them for that purpose, the implication might arise from a different state of facts is clearly rebutted. Again, the property in controversy was the residence of the testator, is devised by him to his wife, for her life, and power is given to her in her discretion to sell the property at any time, "upon such terms and conditions as she may deem most advantageous, and to invest the proceeds in her discretion, either in the purchase of another residence, or in land, or negroes, to be used and enjoyed by her during her life." This discretionary power of sale for investment in other property thus expressly given, rebuts the implication which might otherwise arise from the general words contained in the second clause of the will.

Again, in the seventh clause of the will, an express power to sell this particular property is vested in the executors, after the death of his wife, in the event she had not sold it. This discretion is to sell, "upon such terms and conditions as they may deem most beneficial to my estate, and to invest the proceeds in land and negroes, to be divided as his other property," in the manner mentioned afterwards in his will.

This express power of sale and re-investment for other purposes than the payment of debts, is totally inconsistent with the idea that the testator intended, by the general language used in the second clause, to create a charge on this property, or to place it in the hands of his executors, with any trust upon it for the payment of his debts, except that trust or charge, which by law is impressed upon the whole property, real and personal, of a decedent. When the testators intended to confer upon his executors a power to sell his real estate, he confers the power expressly and in language, about which there can be no mistake, nor any necessity to resort to implication.

It is very clear, from the condition of the testator's property at the time of his decease, that he did not contemplate the necessity of selling any of his property to pay his debts. These he supposed would be paid out of the proceeds of his crops, from which a surplus was expected after payment of debts, that could be invested in property for the use of his children.

The only property for which authority was given to sell by the will, was the lot and residence in Vicksburg. In that property the wife had a life estate, and as it was designed by the testator to be used as a residence by his wife, we can well see why he would authorize her to sell it, if she should desire to do so. The testator could not see into the future, and therefore could not undertake to say that it would be agreeable to his wife to continue her residence in Vicksburg. In that event, he gave her authority to sell, but provided that the proceeds thereof are to be invested, in her discretion, either in the purchase of another residence or in land or negroes. In looking at this clause of the will, it will be seen that the direction to invest, should the wife make a sale, is imperative. The only discretion left to her, is to invest in another residence or in land or negroes. But if the sale is made, she is absolutely directed to make the investment in other property. In short it is a mere authority to sell the residence in Vicksburg with a view to investing in other property which the wife might deem more advantageous or desirable.

When we come to look at the seventh clause of the will, by which authority was given to the executors to sell, we find that the power to sell was restricted to the lot and residence in Vicksburg. That power, however, is given with an express direction to invest the proceeds in land and negroes. The same sentence which confers the power to sell, contains the direction to invest ; it is impossible on looking at it, that the testator

had any other idea in his mind than to confer upon the executors a power to sell for any other purpose than for re-investment. It was a simple power to change the property in Vicksburg, which might not be productive, and which would not be needed by his children during their minority, into land and slaves, from which a profitable income might be reasonably anticipated to inure to his children from the change. He no doubt thought that in the event of the decease of his wife, and during the minority of his children, his residence in Vicksburg would have to be rented out; and its value thereby materially impaired, as is too frequently the case with rented property. Hence he left it discretionary with his executors to sell that property, but coupled that discretion with express directions to invest the proceeds in lands and slaves. It was intended to be a mere change of property from a residence in Vicksburg, which might be non-productive during the minority of his children, into a different kind of property, the usual and favorite investment in this country before the war, where parents were making provision in the future for their children.

3. The power to sell was a discretionary power given to his executors, to exercise "upon such terms and conditions as they may deem most beneficial to his estate;" the power thus given could not be exercised by either without the assent and concurrence of the other executor, upon the principle clearly and distinctly announced by this court in the case of Bartlett v. Sutherland, 24 Miss. 395, in which the court say: "Where a power to act is conferred upon two or more, and it is dependent upon their judgment whether the act shall be done or not, the power conferred in such case is a special trust or confidence reposed in the judgment of all, and without the concurrence of all, the power cannot be exercised." See Wooldridge's Heirs v. Watkins' executor, 3 Bibb, 349.

In the present case, the power was not conferred upon Lane and Lum as individuals, but as a power conferred upon a class of persons, to wit: " My executors hereinafter named." The power was therefore to be exercised by those parties who held the office of executor, and it was a power to be exercised by all with the concurring judgment of all. It is true that Lum signed the deed, but it is stated that he signed it as a mere matter of form after the sale had been made and agreed upon, and he had nothing whatever to do with making the sale; but it is also true that Lum never qualified as executor, and therefore he had no power to do any act conferred by the testator upon his executors. The power to sell was conferred upon the executors as a class and not upon them as individuals. It may well be presumed that the testator would be willing to give the power of sale to his legal representatives, qualified according to law, and who were acquainted with the condition of his estate and its wants and necessities, when he would not have been willing to give such a power to persons entirely ignorant of the condition of his estate, and therefore without the knowledge necessary to enable them to exercise a sound discretion on the subject.

*U. M. Young*, on the same side,

Contended, that the conveyance from Lane and Lum to Hornthal and Blakemore was void, for the reasons stated in the foregoing brief of associate counsel, citing Rev. Code of 1859, p. 436, art. 53; Franklin v. Osgood, 14 Johns. 553; Ballard v. Davis, 31 Miss. 525; Hill on Trustees, 719; 6 Johns. 73 (note); 3 Cow. 651; 22 Ohio, 241; 1 Bush, 240. The power to the executors was discretionary, hence the statute allowing one executor to sell, does not apply. Hill on Trustees, 707 (note 1), 731; Woolridge v. Watkins, 3 Bibb, 350; Clay v. Hart, 7 Dana, 1; Brown v. Hobson, 3 A. K. Marsh. 381; Mallet v. Richardson, 6 Rich. Eq. 22; Bartlett v. Suther-

land, 24 Miss. 401; S. & M. Ch. 498; 5 S. & M. 118; Slocum v. Slocum, 4 Edw. Ch. 613; Clark v. Riddle, Exr. 11 Serg. & Rawle, 311; Doe v. Allen, 1 Penn. (N. J.) 45; Hill on Trustees, 524, 526, 539; Bank of U. S. v. Beverly, 1 How. (U. S.) 134; 2 Ves. 313; Keeling v. Brown, 5 ib. 359; Powell v. Robins, 7 ib. 219; 2 Redfield on Wills, 855, 526; Warren v. Davies, 2 M. & K. 49; Fowle v. Green, 1 Ch. Cas. 262; Story Eq. Pl. §§ 163, 205, 206; 3 Vesey, Jr. 550; Pow. on Dev. (Jarman), 654.

The purchase money was misapplied. Under the will the executors had no right to sell to pay debts. Hammin v. Spear, 2 Dall. 291; 1 Yeates, 553; 1 Rawle, 377; Clarke v. Campbell, 2 Rawle, 215; Jackson v. Jansen, 6 Johns. 73; Sharpsteen v. Tillon, 3 Cow. 651; Hill on Trustees, 525, 721; 2 Sug. on Pow. 473, 474, cases cited.

The defendants rely upon being innocent purchasers, without notice of the misappropriation of the purchase money.

The defense of innocent purchasers is only complete by averring and showing that the consideration was valuable, that it was *bona fide* paid. It is not enough to show that it was secured to be paid. Moon v. Mahon, 1 Ch. Cas. 34; Day v. Arnold, Hard. 310; Hardington v. Nichols, 3 Atk. 304; Maloney v. Kerman, 2 D. & W. 31; 3 Atk. 814. In order to their protection, the purchase must be complete before notice of the prior equity. To make it complete, there must be on the one side an execution of the conveyance, and on the other a payment of the whole purchase money; and the protection will be denied if the notice be given before the transaction is complete in either particular. As to the character of the notice, the principle seems to be pretty well established by authority, that whatever is enough to excite attention, or put the party on inquiry, is notice of everything to which the inquiry might have led. Sufficient information to lead to a fact, shall be

deemed sufficient to charge a party with knowledge of it. Kennedy v. Green, 3 M. & K. 719; 1 Gallison, 41; Hinds v. Vattie, 1 McLean, 118; Carr v. Hilton, 1 Curtis C. C. 393; Wailes v. Cooper, 24 Miss. 228; Parker v. Foy et al. 43 Miss. 265. See also Ohio Dig. 650; 4 Ohio St. 445, 463, 464; Gilman v. Hamilton, 16 Ill. 231; Ill. Dig. 586; 8 Ohio, 217; 12 Wheat. 498; Garnett v. Macon, 6 Call. 361; Spear's Eq. 141; Hill on Trustees, 165, 166 (note 2); Wormley v. Wormley, 8 Wheat.; 1 Brook, 330; 8 Wheat. 421; Hill on Trustees, 530; 1 Lead. Cas. Eq. 75; 2 ib. 20, 32, 58, 60; 25 Wend. 238; 3 Cow. 651; 14 Johns. 517; 3 Hill, 262; 12 Johns. 343; 2 Paige, 201; 2 Eq. Ch. Abr. 682; 3 P. Wm. 91, 95, 244; 3 Atk. 815; 2 Ves. Jr. 430; 1 Vern. 185; 5 Ves. Jr. 526; 2 Johns. Ch. 155, 157; 8 Wheat. 421; 1 Johns. Ch. 287, 566.

*T. A. & M. Marshall*, for appellees.

In the construction of the will it is necessary to keep in view the following rules, by which we are enabled to better consider the powers derived therefrom, the main object being to ascertain the object of the testator. The intention of the testator is a matter of considerable importance in the construction of these powers. Bartlett v. Sutherland, 24 Miss. 402. And to this end the will must be favorably and benignly expounded, and the whole taken together. Touch. 434; 2 Black. Com. 387; 1 Paige, 331; 3 Barr Ch. 448. Such intention will control even the legal operation of technical words. 6 Cruise Dig. (3d ed.) 148. When there is a general intent, and also a particular one, the particular is to be sacrificed to the general. Doe v. Smith, 7 T. R. 531; Parks v. Parks, 9 Paige, 107. Such a construction should be given to the will, if possible, as to impart meaning and substance to every expression of the testator. Taken altogether, the will shows the intention of the testator to have been that his debts should

be paid, and that the executors were authorized to sell the property for that purpose.

Even at common law, when the policy of the feudal system was opposed to subjecting the realty to the payment of debts, and when it was not liable to any except those by specialty—unless the testator chose, by will, to make it subject—the general directions of this will were held to mean that the testator did so intend, and that the real estate was, by words of this character, charged with the payment of the testator's general debts. It has been settled that a general introductory direction by a testator for the payment of debts, followed by a disposition of the real and personal estate, amounts to a trust for the discharge of the debts, if necessary, out of the real estate. Hill on Trustees, (4th ed.) 523, notes; 2 Jarm. on Wills, 512, 513, and cases cited. The settled doctrine is, that the debts in all such cases constituted, by implication, a charge of the debts on the real estate. 2 Story Eq. Jur., § 1240, notes; Scott v. Vernon, 2 Vern. 708; Claudlesley v. Pelham, 1 ib. 411; Williams v. Chitty, 3 Ves. Jr. 550; Hartley v. Hurle, 5 ib. 443; 540, notes; Finch v. Hattersly, quoted in 7 Ves. 210; 3 Russ. 345; 1 Vesey, 436, 440, notes; 2 ib. 267; Magruder v. Peter, 11 Gill. & J. 217; 1 Sug. Pow. 478, notes; Fennich v. Chapman, 9 Pet. 461; 4 Cranch, 303, 304; 14 B. Mon. 433; 7 Dana, 11, 12; Andrews v. Sparhawk, 13 Pick. 393, 400; Meakings v. Cromwell, 1 Seld. 134, 140, 141. The reasons of the feudal policy being now obsolete, the law has been changed by statute, so that "the real estate is now subject to all debts over and above what the personal estate may be sufficient to pay. Lee v. Gardner, 26 Miss. 541, 542; Rev. Code of 1857, p. 443, art. 85; ib. p. 455, arts. 88, 89; ib. p. 448, art. 98; Evans v. Fisher, 40 Miss. 643, et seq.; North v. North, 1 Phill. 85.

It is therefore contended, that since there is no necessity for using such words to secure debts, which

are now charged on land by law, that, therefore, such language means nothing; that the words are "mere words of form." Our answer is, they must be construed to mean something, if possible, and effect must be given to every expression of the will; now it seems to us, that since the testator knew that the law would charge his land in aid of the personalty, and knew, therefore, that there was no need of his using such language, merely to effect that purpose, he must have meant something more than that; he must, by the use of these words, have meant to give an authority to his executors, which they would not have if he did not give such direction.

"In a case of devise for the payment of debts, of lands subsequently devised, the beneficial interest is conveyed to the devisee, subject to the payment of debts." 2 Story Eq. Jur., §§ 1245, 1246.

There is no difference whether land be given to be sold to pay debts, or merely charged with the debts; if such a distinction was made, the consequence would be, that whenever lands are charged with the payment of debts generally, they could never be discharged of the trust without a suit in court, which would be very inconvenient: No instance has been produced to show that in any other respect, the charging lands with the payment of debts differs from directing them to be sold for such a purpose. Elliott v. Merryman, Ben. 78 ; 1 Lead. Cas. Eq. 100. See also Shaw v. Bowen, *passim*, 1 Kee. 559 (5 Eng. Ch.) ; Forbes v. Peacock, 1 Phill. 717; Ball v. Harris, 4 Myl. & Cr. 464 Executors may sell, though not directly authorized to do so. Wood v. White, 4 Myl. & Cr. 482; Hill on Trustees, 522, 523, 527, 532, 537, and notes ; Newman v. Johnson, 1 Vern. 45. Executors would have power by implication to sell, and such power is well executed by deed from one executor, the other not qualifying. 1 Sug. on Pow. 194, 199, §§ 41, 50, 52.

It being established that the will charges the land

with debts, the trustee must have power to sell, if nothing is said. Hill on Trustees, 523; Bodley v. McKinney, 9 S. & M. 357, 358; 2 Redf. on Wills, 855; Tait v. Northwick, 4 Ves. 816.

Was the sale by N. V. Lane, executor, and Jno. S. Lum, who had failed to qualify, a valid execution of the powers conferred by the will?

In the first place, if said lands be held to be by the said will devised to be sold for the payment of debts, under art. 136, p. 458 of Rev. Code of Miss. (1857), which provides, "If land be devised to be sold, the sale shall be made and the proper conveyance executed by the executors, or such of them as shall undertake the execution of the will, or by the person appointed by the will to execute the trust, and if the executor should fail to qualify, or should die before he executes the will, and if the person appointed should fail to execute the trust, the sale shall be made by the administrator with the will annexed," the executor, N. V. Lane, alone, could execute that trust. Even at common law, the execution of such power by other executors, qualifying alone, would be sufficient, and the joining of Lum in the deed could do no harm, even if it did no good. The sale to pay debts is, if the necessity arises, an imperative duty and not discretionary with executors. "The executor would have power by implication to sell, and such power is well executed by deed from one executor, the other not qualifying. 1 Sug. on Pow. p. 194, § 41; ib. p. 199, §§ 50–52, and note 1.

The rule of the common law extended only to prevent the execution of a naked power by one trustee. In this case, no donee of the power given by second item standing alone is named in the will, but the executors, as such, are the persons whose duty it is to pay debts, and in carrying out said power, they act as executors, and not as mere trustees. This is the distinction, and

those acting may alone sell for the purpose of paying such debts.

If a will direct land to be sold, not naming a donee of the power, the power devolves by implication upon the executor, providing he is charged with the distribution of the fund. Lockhart v. Worthington, 1 Sneed, 318.

An authority to sell land for the payment of debts, naming no one as the person who is to make the sale, then the executors, or survivor of them, are the persons to whom, as such, the duty of paying the debts attaches, and he may sell. Pow. on Dev. 196, 197; Tylden v. Hyde, 2 Sim. & Sta. 238 and 241; Pitt v. Pelham, 1 Ch. Cas. 178; 1 Lev. 304; 21 Wend. 443, *et seq.*

The distinction is, that a naked power or trust to sell is in nowise associated with the character of executor, and is not to be exercised *virtute officii.*

But the power of sale given by the sixth and seventh items are discretionary, and require the concurrence of the judgment of both, and their joint act, if they act as trustees and not as executors.

This is required by general and well established common law principles.

But the principle which demands this, is one relating to the powers of trustees, and not to the duties and powers of executors. In this case the estate has all the benefit of that discretion, knowledge and integrity of both the persons named in the will, and all the requirements of the rules of law are fulfilled, for they both joined in the sale and deed, and both declared said sale for the best advantage of the estate.

It is a general and well settled rule, both at law and in equity, that a power given by a will to the executors to sell and convey land is to be considered as a personal trust, and if it be a joint power given to two, it can only be exercised by the joint act of both. And they may

execute the power, though they may fail or refuse to qualifiy as executors.  Judson v. Gibbons, 5 Wend. 229 ; 1 Sug. on Pow. 199, 200, cases cited ; Keats v. Burton, 14 Ves. 434 ; McIntosh v. Barber, 1 Bing. 50 ; Niles v. Stevens, 4 Denio, 399 ; Taylor v. Morris, 1 Comst. 391 ; Dorland v. Dorland, 2 Barb.  Where a will authorizes the executors to sell the real estate in their discretion, they are trustees as to the execution of the power, and one of them cannot transfer title to the land ; all must join.  Hortel v. Van Buren, 3 Edw. Ch. 20 ; 1 Sug. v. Pow. 478.  The probate of a will authorizing a sale of lands is neither the source nor the foundation of the power.  The executor derives all the interest from the will itself.  Crusoe v. Butler, 36 Miss. 170, 171, 172 ; Lewis and wife v. McFarland, 9 Cranch, 151 ; Pool v. Flegan, 11 Pet. 211.  The power to sell is not derived from the court which grants the letters, but from the will.  The executor derives his power from the testator.  He acts as the trustee of the testator to fulfill his intentions and be governed by his directions, possessing no power of the real estate but such as is expressly given by the will.  Wells v. Parker, 2 Ohio, 127 ; Conklin v. Egerton's admr. 21 Wend. 442 ; 1 Comst. 341 ; Woolridge v. Watkins, 3 Bibb.

Defendants, Blakemore and Hornthall, are not responsible for the application of the purchase money.  Where the trusts are defined, and yet the money is not merely to be paid over to third persons, but it is to be applied by the trustees to certain purposes, which require on their part, time, deliberation and discretion, it seems the purchaser is not bound to see to the due application of the purchase money."  2 Story Eq. Jur., § 1134 ; 1 Sug. on Vend. (1st ed.) 520–521 ; Balfour v. Welland, 16 Ves. 151 ; Wormley v. Wormley, 8 Wheat. 421, 442–443.  As, where it is to pay all debts, which shall be ascertained within eighteen months after the sale ; or where the trustees are to lay out the money

in the funds or in the purchase of other lands upon certain trusts. So, where a rule is made by trustees under a power to sell, and insist upon the same trusts, it has been held in America that the purchaser is not bound to see to the disposition of the purchase money. Ib.; Lining v. Peyton, 2 Des. Eq. 375; Redheimer v. Peyton, 1 Spear's Eq. 135; Nichols v. Peak, Beas. Ch. 69; Elliott v. Merryman, 1 Lead. Cas. Eq. (Hare & Wall. notes), 97, and cases cited; Sims v. Lively, 14 B. Mon. 433; 1 Greenl.; Crink on Real Prop., side page 445 –6, top page 424–5; 2 Sug. on Vend. 39; Pettie v. Gardner, 12 Wheat. 498–502; Andrews v. Sparhawk, 13 Pick. 393–401; Larm's heirs v. Larm's, ex'r, 3 J. J. Mon. 160.

*W. P. Harris*, on the same side.

It must be conceded that the testamentary power is made subordinate to the rights of creditors; that is to say, a testator cannot, by his will, exempt any portion of his real or personal estate from the payment of his debts, should the part exempted be needed to pay them; nor can he prefer one class of creditors to another, where there are not assets enough to pay all. With this limitation, the testamentary power remains as it was before the statute was passed.

The testator may take the administration of his estate from the probate or chancery court altogether. His executor must submit his accounts to the inspection of the court, but he must dispose of the estate and deal with it according to the directions of the will. Every testator, by the appointment of an executor, and by prescribing his powers and duties, declares his wish to have his estate managed and settled without the intervention of the courts   It has never been doubted nor disputed that a testator may empower his executor to sell the real estate for the payment of debts; the manner of the sale, whether public or private, is left to

the discretion of the executor, notwithstanding the statute prohibiting executors or administrators from selling at private sale, and that which requires the deficiency of personal estate to pay debts to be first judicially ascertained before a sale can be made. These statutes have been construed to apply only to cases of intestacy, and to cases where the will contains no directions, express or implied, to the executor to sell.

The whole of the testamentary statute law must be read together. This power of the testator to invest his executor with power to sell for the payment of debts and legacies is not only recognized, but it is plainly declared that the directions of his will in this respect shall be paramount. Code of 1857, art. 136, p. 458. It is plain, therefore, that the testamentary power in this respect has not been curtailed. The question with which we started out is, therefore, narrowed to this: by what rules of interpretation or construction are we to determine whether a will confers the power on the executor to sell without the order of the court, and without a judicial determination of the necessity for a sale? In forming our answer to this question we must bear in mind that there is no public policy or statute regulation opposed to private sales by executors under powers contained in wills. If there is any one thing conspicuous in the legislation and jurisprudence of England and America, it is the policy of giving the utmost latitude to the testator in the disposition of his property, subject only to his absolute duty to make adequate provision for his debts. This almost unlimited power over acquisitions is one of the main incentives to prudence, industry, and economy—that private thrift which makes up a nation's material prosperity.

Our legislation may furnish the rule by which we may determine whether a particular power can be created by will, but it does not prescribe the rule by which we are to ascertain what power was intended to

be conferred. When the statute was enacted, there were well established rules of construction by which the intention of the testator was ascertained. These rules have not been expressly abolished, nor can their abolition be rationally deduced from our legislation, and if new rules are now to be applied to wills, it remains for those who assail the old rules to point out when and under what sanctions the new rule was introduced.

When the legislature has found it expedient to alter the rules for interpreting wills and deeds, where the meaning of particular words had theretofore received a settled construction, express words have been employed to alter the rule, as in the case of bequests or devises in lieu of dower—the rule as to the words, "necessary to create a fee, in deeds," and as to the words, "die without heirs, issue and children," in the limitation of estates, etc., etc. But we find no change made as regards the effect of words charging lands, primarily or secondarily, with the payment of debts, nor of those heretofore held to confer powers on executors to sell, nor those which had the effect of exhonerating particular assets.

There is one all-sufficient reason for allowing the old rules to remain. The legislature had in view the protection of creditors. Where the will makes adequate provision for them, the policy of the law is fully answered, without trenching upon the testamentary powers, and as there was no design to interfere with the testator's wishes and the object of his bounty, and as the provisions of his will, as to the manner in which the debts are to be paid, and the fund which shall be applied, materially affect the interests of legatees, an adherence to the existing rules of the construction, as to the effect of words charging debts upon property, was indispensable.

It may be further observed, that there is no ground for the application of the rule that those provisions in wills, which merely direct what the law requires, and

which would have been done by operation of law without the will, are to be held inoperative. It has been repeatedly held that a direction that the executor shall sell the real estate to pay debts is a valid and operative provision, even where the sale is dependent on the insufficiency of the personal estate. This is an admitted doctrine in this state. It is otherwise where the testator simply charges his personal estate with debts, and the reason assigned is, that the law charges the debts on the personalty. It is assets absolutely, and it is made the duty of the executor to pay the debts out of the personalty. The rule goes no further, however, than to declare that what the executor takes *virtute officii*, is by law charged with the payment of the debts absolutely and primarily. It rests in the executor by law, and he has the legal estate. Jones v. Scott, 3 Mylne & Craig, 500. The executor, however, does not take the land *virtute officii*, and with an implied trust. That descends directly to the heir or vests in the devisee. Nowhere has this proposition received more explicit and frequent recognition than in this state. The heir does not take the land subject to a power in the executor or administrator, except where the lands are by will charged with the debts. The heir takes the land subject to the power of the court to decree their sale, on a contingency to be established by proof. It is incontrovertible that lands become assets only by virtue of a judicial proceeding against the heir, by which it is determined that there is not personalty enough to pay the debts, and what part and what amount of the real estate shall be sold. This divests a a title in the heir. The executor, as such, at no time, by operation of law, could decide these questions or acquire any power over the lands, and the court sells by a commissioner, and receives or rejects the sale upon a due consideration of the terms and circumstances of the sale.

Where power is conferred by the will by any form of words or directions which are held to confer it, the executor determines the propriety of a sale, or ascertains the necessity for a sale, and may sell without application to the court. It is true, the trust being created, he might, where there was any doubt or where there existed any complications, apply to the court of chancery for its aid, but he was not compelled to do so. Beyond all doubt, when there is express direction in words to the executor to sell the lands in case of deficiency of assets to pay the debts, it would be upheld as a valid provision, and the statute before cited would compel the courts to admit the power and permit its exercise, and there is no conceivable reason for distinguishing between express words and words from which, by a well established rule, contain this power.

This court has often recognized the established rules of construction, and especially have they recognized implied charges of debts on property, or on a particular fund, and the rules governing oneration and exoneration. Currie & Naylor, Ex'rs v. Murphy et al. 35 Miss. 473 ; 3 Mass. 178.

It may, therefore, be safely assumed that our statutes have left the testamentary power and the rules for the construction of wills where they stood before, except that a testator cannot exonerate absolutely any of his property from the payment of his debts, if used for that purpose, nor exclude any creditor from an equal participation in the estate.

By the settled rules of construction, the language of this will charges the general debts of the testator upon the real and personal .estate, and subordinates all devises and bequests to · this paramount purpose of the testator. The will here, according to these adjudications, is to be understood a charging the real estate with the payment of the debts, and that this direction contains within it the implied power of sale, and that

the executor, though not named, being charged with the duty of paying the debts, has, by implication, the power to sell the lands. 2 Story Eq. Jur., §§ 1246–7; Graves v. Graves, 8 Sim. 436–56; 2 Jarm. on Wills, 365–372; 2 Lead. Cas. Eq. 118, 120, 121; Hill on Trustees, 499–500.

The law of Alabama, of 1806, contains the identical provisions of our code, as to charging debts upon land. Yet, in the noted case of Darrington et al. v. Roland et al. 3 Porter, 9, the court applied the English doctrine, and held that the words, " I direct that my debts shall be paid before distribution of my estate," was an implied charge upon the land, and created a trust which attached to the land in the hands of the devisee.

Nothing could be more significant as to the fact that old rules of construction of wills have secured modern legislation, which charges general debts upon the realty, than the case of Meakins v. Cromade, in 3 Sand. (Law), 512, affirmed in 1 Seld. 186. The Revised Statutes of New York provide that where there is a direction to sell in a will, and no one is indicated, the court has power to decree sale.

The will directed a sale to pay debts and legacies. The court held, on the faith of the old doctrine, that the executors, being the persons who were to pay debts and legacies, were impliedly indicated, and thus took the case out of the statute, and that the executors, or the one qualifying, could sell, and at private sale. See Tiff. & Bull. on Trusts, 753, 758.

The next point for examination is that touching the power of the acting executor to sell, there being two executors named in the will, and only one having qualified.

In the case of Bartlett v. Southerland, 24 Miss., the court, after deciding that the power given by the will in that case was one dependent on the judgment and discretion of the executors, proceeded to declare that our

Statute Code, 458, did not apply to such a case. This
decision is put on the authority of Woolbridge v.
Watkins, 3 Bibb (Ky.). That was a case of purely dis-
cretionary power, not connected with any positive duty.
The executors were to sell only, if in their judgment it
should be necessary. This case came under review in
Coleman v. McKinney, 3 J. J. Marsh. 246, which was
the case of a will which directed the sale of the land if
the personalty should prove insufficient; the court held
this to be a power which would survive or could be ex-
ercised by the executor qualifying. The court said it was
not to be inferred from the case of Woolbridge v.
Watkins, 3 Bibb, that the statute only applied to posi-
tive and unconditional power to sell, and that the
power or direction to sell, in case of a deficiency of per-
sonal estate, was a positive duty dependent on a contin-
gency only, but which became absolute when the
contingency happens. The case of Bartlett v. Souther-
land is not to be carried beyond the principle it
invokes, nor the authority on which it rests. It rests
on the Kentucky doctrine, and on the case of Hartell v.
Van Buren, 3 Edw. Ch. 20, which was a direction to
sell, if in the judgment of the executors it would ren-
der a division more easy. The cases which best illus-
trate the subject are : Peter v. Beverly, 10 Pet. 532 ;
1 How. (U. S.) ; Osgood v. Franklin, 1 Johns. Ch. 1 ;
McGruder v. Peters, 11 Gill. & Johns. ; 21 Wend. 442 ;
Hester v. Hester, 2 Ired.; Taylor v. Morris, 1 Comst.
341 ; Bodley v. McKenny, 9 S. & M. 339 ; 2 Williams on
Ex'r, 859. The case we have is a power connected with
a positive duty, both under the will and under the law.
The precise meaning given by the authorities to the
general direction to pay debts is, that the executor is
first to resort to the personality, and then to the realty.
There is no exception to the rule, that when a trust is
created to pay debts, or a power to pay debts in the
disposition of property, by deed or will, the implied

power to sell raised by implication will survive or at-
tach to the executor qualifying, provided no words be
used clearly indicating a different purpose. Tiff. &
Bull. 755, 758. Where there is a general or specific
direction to pay debts, amounting to a charge on the
lands, it gives by implication the power to the executors
or the survivor to sell. The direction in this will is
general as to all debts, and specific as to some, but the
executors are not by name or title referred to, yet the
executor, being the person charged with the duty of
paying the debts, the power is impliedly given to him.
Sug. on Pow. 166, 465 ; see also Williams on Ex'rs, 859,
note *b*. If art. 136, p. 458 of the Code, relates only
to cases where the will by express words empowers the
executor to sell ; if we exclude one implied power or
direction, for the same reason we must exclude all. The
exoneration of the personal estate is often made out by
implication, so the exemption of a particular portion of
the estate is made out, not from express words, but by
implication.

No inference is to be drawn from the relative extent
of personalty and realty, as to the intention to charge
or to exonerate. 1 Lead. Cas. Eq. 484 ; nor does the
devise of part of the lands to the executor for life, in-
fluence the construction. The English doctrine is, that
if the will directs the executors to pay the debts, ex-
pressly naming them by their title of office, this charges
the personalty only, unless the will devises land to the
executor as such, because the executor being named, it
is supposed that the testator required him to pay only
from the estate he takes, and that is the personal estate
only. 2 Jarm. 374–5.

It is never considered that the devise of a particular
part of the real estate, whether for life or in fee,
created any presumption against the intention to charge
the whole estate with the testator's debts. The charge

is paramount; if the intention be created, one sort of legacy or devise is as significant as another. There is, however, in the will an express power given to the executor to manage and control, with full authority, the whole estate, to carry out the purpose specified in the will; upon her death her successors are to succeed to like powers over the estate. The first named and most important of the specified purposes is the payment of debts, and clearly this would legitimately involve the contingent power to sell all the estate, if need be. There is express power given to sell the property in question, and to this power the successors of the executrix succeeded. It would seem that the life estate being given as a residence for the widow, the testator supposed that this might be considered as excepted out of the large powers conferred on the executrix, and this provision was inserted for that reason, and there are very satisfactory reasons for the position that the executrix had the power of sale absolute, with a discretion as to investments. There is no escape from the construction that the will gives power to sell any and all the property to pay debts, if necessary, and also gives power to sell the property devised to the executrix, though it might not be necessary. This property, at the termination of the life estate, was to fall back into the estate of the testator, to answer not one, but all the purposes of the testator, the chief of which was to pay his debts. The executors sold for this purpose, the property being actually needed to pay debts.

*Nugent & Yerger*, for appellants, replying,

Cited and commented on 2 Jarm. on Wills, ch. 45, and the cases cited; Septon v. Septon, 2 Johns. Ch. 624; 2 Dev. 283; 11 Serg. & Rawle, 311; Gardner v. Gardner, 3 Mason, 178; Darryton v. Ballard, 3 Park (Ala.); Charlton v. Wright, 36 Eng. Ch. 233.

Peyton, C. J.:

Edward M. Lane, being possessed of a large estate in his own right, consisting of real and personal property, on the 27th day of September, 1860, made his last will and testament, and appointed his wife, Laura, sole executrix, with full power and authority to manage and control his estate.

The second clause of the will contains the following language: "I wish all my debts to be paid as soon as possible."

By the fifth clause, the testator devised to his wife, for the term of her natural life, the property in controversy, being his lot and residence in the city of Vicksburg.

The sixth clause is as follows: "Should my wife desire to sell said lot and residence, she is hereby authorized to do so, upon such terms and conditions as she may deem most advantageous, and to make a deed therefor as executrix, fully binding my heirs, the proceeds thereof to be invested, either in the purchase of another residence, or in land and negroes, the use and benefit of which shall be enjoyed by her during the term of her life."

The seventh clause provides as follows: "Should my wife not sell said residence and lot, at her death my executors, hereinafter named, are hereby authorized to sell the same, and for that purpose they are hereby invested with full power to sell upon such terms and conditions as they may deem most beneficial to my estate, and to invest the proceeds in land and negroes, to be divided as my other property hereinafter mentioned."

And the twelfth clause contains the following provision: "At the death of my wife, I appoint as guardian of my children, N. V. Lane, and as the executors of my estate, N. V. Lane and John L. Lum, and request they may act without security; and I do hereby give them all the power and discretion to act in the premises as I

have herein given to my wife as sole guardian and executrix."

At the November term of the probate court of Warren county, 1870, the said will was admitted to probate, and the execution of the trusts of the same was committed to said Laura as executrix. And after her death letters testamentary were granted by said probate court to the said Newit V. Lane to execute the trusts of said will, the said Lum declining to act and refusing to qualify according to law.

And on the 18th day of April, 1868, the said Newit V. Lane and John L. Lum sold and conveyed to Julius Hornthal and Marcus H. Blakemore, for the sum of $20,000, the said lot and residence, in the city of Vicksburg, and which is now the subject of litigation in this suit.

The heirs of said testator filed their bill of complaint in the chancery court of the said county of Warren, against the said Hornthall and Blakemore, and others claiming under them, to set aside, annul and cancel the deed, executed by said Lane and Lum to said Hornthal and Blakemore, as casting a cloud over the title of the complainants to said real estate, that the possession of the same may be restored to them, and that Hornthall and Blakemore may be required to account to complainants for the profits and income of said property.

To this bill the defendants filed a demurrer, which was sustained by the court and the bill dismissed. And hence the cause comes to this court by appeal for revision.

This cause has been argued with great ability by counsel, and presents for our consideration questions of no ordinary interest and importance, involving the construction of the testator's will, as to the powers conferred by it upon the executors named therein.

The main questions, involving the testamentary powers, are two. 1. Do the words "I wish all my

debts to be paid as soon as possible," give the executors a power, by implication, to sell the real estate for the payment of debts?   2. Is the conveyance of the house and lot in controversy by Lane and Lum, to Hornthall and Blakemore, a valid execution of the power given them as executors by the 7th and 12th clauses of the will?   These questions will be considered in the order in which they are above stated.

At common law, the personal estate, only, of a deceased person was liable for his debts, unless they were debts by specialty, or matter of record.   However large his real estate might be, no recourse could be had to it to pay simple contract debts, although his personal property was utterly insufficient to meet them.   The common law, in this respect, has been changed in England, by the statute of the 3d and 4th William IV, ch. 104, by which real estate in that country has been made assets for the payment of debts in aid of the personal estate.

If a will gives a power of sale to pay debts and legacies, or for distribution, without stating by whom the sale is to be made, it has been held, that the executor takes the power by implication, because this is necessary to carry out the provisions of the will.   It is his duty under the will to pay the debts and legacies, or make distribution.   If a testator should order his real estate to be sold for the payment of his debts, without saying who should sell, in such a case, a clear trust would be created. And although a court of law will not, in such a case, take cognizance of the trust, a court of equity will not hesitate to declare who is the proper party to execute the trust; or if no one is designated, it will proceed to execute the trust by its own authority, and decree a sale of the land.   In the case put, of a trust for the payment of debts, if executors are named in the will, they will be deemed, by implication, to be the proper parties to sell; because in equity, when lands

are to be sold, they are treated as money; and, as the executors are liable to pay the debts, and if the lands were money, as they would be the proper parties to receive it for that purpose, courts of equity would hold it to be the intent of the testator, that the parties, who are to receive and finally execute the trust, are the proper parties to sell for the purpose.  2 Story Eq. Jur., 278, § 1060.  In these cases there was a power of sale given by the will to pay debts in the first, and in the other, an order by the testator to sell his real estate for the payment of debts.  The power and authority in these cases were given by the will for the specific purpose of paying debts, and were not derived, by implication, from a general charge of debts upon the estate of the testator.

There can be no doubt that in England, prior to the above mentioned statute, making lands assets for the payment of debts, the words in this will,  " I wish all my debts to be paid as soon as possible," would have created a general charge upon all the lands of the testator, which could have been enforced only in a court of equity.  They would have given no power, by implication, to the executors to sell.

In this country there is no necessity to resort to implied powers, as the real estate of the decedent, by force of the statutes in all the states, become assets in the hands of the personal representative, for the payment of debts in all cases where the personal estate is insufficient for that purpose.  3 Redf. on Wills, 238 ; 2 Dev. 288.

It has been determined that a mere charge upon real estate cannot give the executors a legal power to sell it.  Doe v. Hughes, 6 Exch. 231.  In this case, the court held that a charge had no operation in law, but must be enforced in equity, from which it follows that the executors could not sell without a license or decree of court.  And Mr. Lewin thinks this was a sound

decision upon the legal question.   Perry on Trusts, 744, 746.

Inasmuch as our statute has declared that the lands, tenements and hereditaments of the testator shall stand chargeable for the debts, over and above what the personal estate may be sufficient to pay, and has prescribed the mode in which they may be reached for that purpose, we think the doctrine of implied power in such a case as the one under consideration, has no application in this state.

And this brings us to the consideration of the question, whether the conveyance of the real estate in controversy in this suit, by the executors named in the will, to Hornthall and Blakemore, is a valid execution of the power given them by the will.

The will is the executor's law, and he is no more than the testator's representative in all things lawful in the will, and he must pursue with reasonable strictness the power conferred upon him by the terms of the will.

In this case, the lot was devised to the wife of the testator during her natural life, and upon her death, a naked power, uncoupled with an interest, was given by the terms of the will to the executors named in the will, to sell it for the specific purpose of re-investment of the proceeds of the sale in land and negroes, which were to be added to his estate, and divided as the other property of the testator in the manner specified in the will.   It is very evident that the testator never contemplated a sale of this property for the payment of debts.   Having a large personal property, as well as real estate, he had a reasonable expectation that his debts would be paid out of the income of his large estate, and, judging from the amount of his property and the provisions of his will, it is very clear that he did not anticipate that a necessity would ever exist to sell any part the *corpus* of his estate to pay debts. The fact of devising the property in dispute to his

wife for her life, indicates clearly that he never intended it to be sold for the payment of his debts, which he wished to have paid as soon as possible.

A direction that executors shall sell lands for the payment of debts, unaccompanied by a devise to them, confers only a power, and not an estate. Hawk. on Wills, 152; Doe v. Shotter, 8 Ad. & Ell. 905.

In the case at bar, had the land been devised to be sold in terms not requiring the exercise of the judgment and discretion of the executors in the sale, the sale might be sustained under article 136 of the Code of 1857, page 458, which provides that if lands be devised to be sold, the sale shall be made and the proper conveyance executed by the executors, or such of them as shall undertake the execution of the will, or by the person appointed by the will to execute the trust.

The 7th and 12th clauses of the will give a mere naked power, in the execution of which the donees of the power are to exercise discretion and judgment; they are to sell upon such terms and conditions as they deem most beneficial to the estate.

If a power of sale, or any other power, is given to two or more persons by name, with no words of survivorship, and one dies, or refuses to act, the others cannot execute the power. Perry on Trusts, 447, § 499. And this is especially so where the donees of the power are to exercise judgment and discretion in its execution. Tiff. & Bull. on Trusts and Trustees, 759; Wooldridge v. Watkins, 3 Bibb. 350; Clay v. Hart, 7 Dana, 8; Mallet v. Smith, 6 Rich. Eq. 22.

Authority given to executors to sell is a personal trust, and must be strictly pursued; and if they transcend their authority, in any essential particular, their act is void. Ventriss v. Smith, 10 Pet. 101. And a will authorizing executors to sell and convey land, confers only a naked authority, and gives neither a right

of property nor a right of action. Jameson v. Smith, 4 Bibb, 307.

The doctrine is well settled, that a mere direction to executors to sell land, is a naked power, and gives them no estate or interest in the land whatever, and until the power is executed, the lands descend to the testator's heirs-at-law. Snowhill v. Snowhill, 3 Zab. 448, 478.

In the case of Shelton v. Homer and others, 5 Met. 465, it was held that where a testator, by his will, authorizes and empowers his executors, or such of them as should take upon themselves the probate of the will, to sell and convey all or any of his real estate, not specifically devised, by public auction or private contract, at the discretion of the executors, for the best price they can obtain, and at such times as they may think proper, a sale by one executor after the other had resigned or renounced the executorship, would be without authority, and void. It was held that the term executors, as here used, relates to the persons who actually become such by taking upon themselves the office. Where executors are individually named in connection with, and who are to execute, the power, there all who are mentioned are required to execute it, to give it validity. The authority conferred by the will was regarded as a mere naked power, not coupled with a trust. The mansion house was not specifically devised, and the authority given to the executors to sell is discretionary; such a power as the court could not compel them to execute for any purposes required by the will.

Derivative powers at common law are of two classes: A power coupled with an interest, and a naked power. A power coupled with an interest is a right or authority to do some act, together with an interest in the subject on which the power is to be exercised. A power of this class survives the person creating it. A naked

power is a right or authority disconnected from any interest of the donee in the subject-matter. And it is a principle of the common law that when a power given to several persons is a mere naked power, not coupled with an interest, it must be executed by all, and does not survive; but when the power is coupled with an interest, it may be executed by the survivor.

This rule of the common law with reference to a naked power is changed in England by the statute of 21 Henry VIII., chap. 4, which declares that the executors, who accepted their trust might sell, though one or more of the persons named as executors should refuse to act. This statute has probably generally been adopted or re-enacted in this country by most of the states. 4 Kent, 325.

The intention of the testator is the prevailing consideration in applying the rules of construction of wills, and this must be judged of, exclusively, by the words of the instrument, as applied to the subject-matter and the surrounding circumstances. Executors can deal with real estate only as they are empowered to do so, by the will of testators, unless it is wanted to pay debts or legacies, and in that case the executors must obtain an order or license from the court exercising probate jurisdiction, which, under our present judicial system, is the court of chancery.

The object and purpose for which the power was given, having partially failed from the emancipation of slaves, and the heavy losses and depreciation of the property of the estate, resulting from the late civil war, so changed the condition of the estate as to defeat the specific object and purpose for which the power was given, and for these reasons it is believed that the conveyance of the real estate in controversy in 1868, by Lane and Lum to Hornthal and Blakemore was unauthorized, at that time as an execution of the power. But should I be wrong in this view of the case, I am of

opinion that said conveyance was an invalid execution of the power, for the reason that the said 7th and 12th clauses of the will, giving to the executors named in the will, power to sell upon *such terms* and *conditions* as they deem *most beneficial* to the estate, conferred upon and reposed a special trust and confidence in them, which required the exercise of the judgment of both as to the terms and conditions, in their judgment, which would make the sale most beneficial to the estate of the testator. The judgment must be formed by both executors, who have actually become such by taking upon themselves the office, and the concurrence of both in that character must be had to the sale and conveyance, to transfer the legal title in the land.

As the terms and conditions of the sale were to be such as in the judgment of the executors should be most beneficial to the estate of the testator, the sale made by Lane the executor, and Lum, who was not executor, did not transfer the title out of the heirs of the testator. This being a naked power, uncoupled with an interest, falls within the common law rule, which requires the power to be executed by all jointly in the character in which it is conferred, in order to be valid. We think this falls within the reason of the cases of Bartlett v. Sutherland, 24 Miss. 401; Wooldridge's Heirs v. Watkins' Ex'r, 3 Bibb, 349.

In the United States, both real and personal property are liable for the debts of a deceased; and no valid trust can be created by will for the payment of debts in either personal or real estate. The statutes of the several states point out how estates shall be administered for the payment of debts. Creditors, in all cases, have the right to demand payment, according to the provisions of the statutes. Thus, trusts, charges, or other directions in wills for the payment of debts, have no legal operation, so far as creditors are concerned. Perry on Trusts, 508, § 559.

It appears, from the bill, that the property was sold for the payment of the debts of the testator, and that part of the proceeds of the sale had been paid by the acting executor to the creditors. There being no evidence of fraud in the transaction, and the sale being made in good faith by Lane and Lum, under a mistaken view of the power conferred upon them by the will, I am of opinion that Hornthal and Blakemore are entitled to be subrogated to the rights of the creditors of the testator, whose debts and claims have been paid out of the proceeds of the sale of the property to them, and that they have a lien upon the property, to the extent of the amount thus paid, for the repayment of the money advanced and paid by them to the executor on the purchase of said property.

At common law, as between the rightful owner of lands and an occupant, who, in good faith, has put on improvements, the land with its improvements belongs to the rightful owner of the land, without compensation for the increased value.

But, in equity, the rule is otherwise. Without undertaking to decide, at this time, whether courts of equity should grant active relief in favor of a *bona fide* possessor of land making permanent meliorations and improvements, by sustaining a bill brought by him therefor, against the true owner, after he has recovered the premises at law, I am of opinion that if the owner seeks the aid of a court of equity to enforce his title, and to recover possession and rents and profits, against an innocent person who has made improvements on the land, that aid will be given to him only upon the terms that he shall make due compensation to such innocent person, to the extent of the benefits which will be received from those improvements. And this, upon the well recognized principle, that he who seeks equity must do equity. The right of the purchaser *bona fide* and for valuable considerati n, to compensation for per-

manent improvements made upon the estate, which have greatly enhanced its value, under a title which turns out defective, he having no notice of the defect, commends itself to our favorable consideration by its natural equity and intrinsic justice. Take the case of a vacant lot in a city. Where a *bona fide* purchaser builds a house thereon, enhancing the value of the estate to ten times the original value of the land, under a title apparently perfect and complete, is it reasonable or just that, in such case, the true owner should recover and possess the whole without any compensation whatever to the *bona fide* purchaser? To us it seems manifestly unjust and inequitable thus to appropriate to one man the property and money of another, who is in no default. The argument of those who oppose this doctrine of compensation is, that the moment the house is built, it belongs to the owner of the land by mere operation of law, and that he may certainly possess and enjoy his own. But this is merely stating the technical rule of law, by which the true owner seeks to hold what, in a just sense, he never had the slightest title to; that is, the house. But admitting this to be so, by the rigid rules of the common law, does it not furnish a strong ground why equity should interpose and grant relief? I think the claim of the *bona fide* purchaser, under such circumstances, is founded in the highest equity; and, in this view of the matter, I am supported by the positive dictates of the Roman law, that great source of equitable principles. It is a grave mistake, sometimes made, to suppose that the Roman law merely confined its equity or remedial justice, on this subject, to a mere reduction from the amount of the rents and profits of the land. The general doctrine, in accordance with that law, is applied, not to all expenditures upon the estate, but to such expenditures only as have enhanced the value of the estate, and beyond what the *bona fide* possessor has been reimbursed by the rents

and profits. 2 Story Eq. Jur. 8, § 799 ; 2 Am. Jur. 294–313 ; Bright v. Boyd, 1 Story C. C. 478, 494.

In the case of Alston v. Boyd, 6 Humph. 504, the court decreed that the sale be set aside, and that an account be taken of the rents and profits of the land in controversy, allowing a reasonable compensation for such improvements as enhanced the permanent value of the land, and decreed that the defendant will have a lien upon the land in controversy for the payment of any balance that may be due him for improvements, after deducting the rents and profits from the value of the improvements.

In the case of Pope v. Henry, 24 Vt. 560, the court say " It is one of the first principles of the Roman civil law, in regard to the title of real estate and valuable erections and meliorations, as they were called, put thereon by the occupier, in faith of a title which subsequently failed for any cause, that one thus benefited by the labor of another, should make reasonable compensation. And this principle has been very early incorporated into the English chancery law.

The courts of Kentucky, taking a comprehensive view of the correct principles of equity in the administration of justice, have maintained that one who acquires title to land *bona fide*, and enters upon and improves it, supposing it to be his own, is entitled to compensation for improvements. The liability in such cases is to be measured by the increase in the vendible value of the land when recovered, arising from improvements. Bell v. Barlow, 1 Marsh. 246 ; Bell v. Barnett, 2 J. J. Marsh, 519; Thomas v. Thomas, 16 B. Monroe, 420. And in the last mentioned case, the court say : " The same general doctrine is recognized throughout the books."

I have come to the conclusion that Hornthall and Blakemore acquired no valid title to the house and lot in controversy by the sale to them by Lane and Lum, arising from a cause which could not have been known

to them before this adjudication.   They were, therefore, purchasers in good faith, supposing that they acquired a good title to the premises by the conveyance to them, and as such having paid their money for the land, and having made valuable permanent improvements thereon, I think they are entitled to a repayment of the money paid by them for the property, with interest, and also to the value of the permanent improvements made by them prior to the institution of this suit, and that they have a lien on the property for the consideration money paid, and interest, and also for the improvements, if any, after deducting the rent and profits.

Upon the return of this case to the court below, an account should be taken of the sum of money paid by Hornthall and Blakemore for the lot, and also an account of the value of improvements put by them upon the same, between the date of their purchase and the commencement of this suit, and likewise on account of the rents and profits of the premises down to the taking of the account.

And upon the coming in and confirmation of the accounts, the court should decree that the appellants, within some reasonable time to be specified, to pay to the appellees, Hornthal and Blakemore, the amount due them for money paid and improvements, less the rents and profits, and upon their failure to do so, the court should decree the property to be sold, except the parcels thereof that have been sold by Hornthal and Blakemore, and confirmed to others, and the proceeds as far as may be necessary applied to the payment of what may be found due to the said appellees, and the balance, if any, to be paid over to the appellants.   But in the case the appellants pay to said Hornthal and Blakemore the amount due them, then the court should decree that the conveyance of Lane and Lum to said Hornthal and Blakemore be set aside, and held for naught, and that possession be restored to appellants.

For the reasons herein stated, the decree ought to be
reversed, the demurrer overruled, and the cause re-
manded for further proceedings, in accordance with the
principles of this opinion.

Mr. Justice SIMRALL did not sit in this case, having
been of counsel in the court below.

TARBELL, J. :

The questions in this case arise out of the will of
Edward M. Lane, deceased, late of Vicksburg, in the
county of Warren. The will being brief is given entire,
its formal parts excepted.

"1st. I hereby appoint my beloved wife Laura, the
sole executrix of this my last will and testament, with
full power and authority, as hereinafter specified, to
manage and control my estate in the states of Missis-
sippi and Louisiana, and direct that she shall not be
required to give security for the performance of said
trust, so long as she remains unmarried.

" 2d. I wish all my debts to be paid as soon as possi-
ble, and I particularly specify the following : First, the
amount due by my father to the Mississippi Conference,
and which I have assumed to pay, about $1,200 or
$1,300 ; second, the amount I owe the Methodist Book
Concern in the city of Nashville, about $3,000.

"3d. I direct that my mother shall be paid $500 per
annum during her life, so long as she requires it, for
the performance of which she already holds my obliga-
tion.

" 4th. After paying the current expenses of my
estate, and the maintenance of my wife and children, I
direct that the annual surplus of money shall be in-
vested by my executrix in the purchase of lands and
negroes as a part of my estate, to be divided with my
other property, as hereinafter directed.

" 5th. I give to my beloved wife, Laura, for the term

of her life, my lot and residence, in the city of Vicksburg, and also to her, absolutely, the house servants; which are mine, and all the silver plate and furniture, and all other personalty pertaining to, and forming a part of, my household establishment.

"6th. Should my wife desire to sell the said lot and residence, she is hereby authorized to do so upon such terms and conditions as she may deem most advantageous, and to make a deed therefor as executrix, fully binding my heirs, the proceeds thereof to be invested in her discretion, either in the purchase of another residence, or in lands and negroes, the use and benefits of which shall be used and enjoyed by her during the term of her life.

"7th. Should my wife not sell said residence and lot, at her death my executors, hereinafter named, are hereby authorized to sell the same, and for that purpose they are hereby invested with full power to sell upon such terms and conditions as they may deem most beneficial to my estate, and to invest the proceeds in lands and negroes, to be divided as my other property hereinafter mentioned.

"8th. I appoint my beloved wife, Laura, as the guardian of my children, and direct she shall not be required to give security for the performance of said trust so long as she remains unmarried.

"9th. It is my wish that my children, under no circumstances, shall be made of age by any act of the state legislature, and that they shall only take their share of my estate in the manner and at the terms herein stated.

"10th. As my children respectively arrive at the age of fifteen years, I direct that their guardian shall charge them with all the money advanced on their account, and deduct the same from their share of my estate.

"11th. I give to each of my children an equal share

of my estate, to be set apart to them respectively at the age of twenty-one years (subject to the deductions in the 10th clause of this will), or should any of them marry before attaining that age, with the consent of their guardian, I direct that property to the amount of ten thousand dollars shall be given them, and that sum, without interest, shall be deducted from their share of my estate at the age of twenty-one years, when a division may be made.

"12th. At the death of my wife, I appoint, as guardian of my children, N. V. Lane, and, as the executors of my estate, N. V. Lane and John L. Lum, and request they may act without security. And I do hereby give them all the power and discretion to act in the premises as I have herein given to my wife as sole guardian and executrix."

This will was executed in September, and Lane died in November, 1860. Mrs. Lane duly qualified as executrix and subsequently died, when N. V. Lane qualified as executor, but Lum, nominated as co-executor, declined to qualify. In 1868, Lane and Lum conveyed by deed to Julius Hornthal and Marcus H. Blakemore, the land in controversy, being the "lot and residence." referred to in the will. It is recited in the deed that said Lane and Lum "were appointed by Edward M. Lane, deceased, as executors of his will, after the death of his wife, *  *  * with full power to sell said land and residence upon such terms and conditions as they might deem most beneficial to his estate," and that "both deem it most beneficial to the estate of the said Edward M. Lane, deceased, to sell the said lot and residence upon the terms hereinafter mentioned." The sale was for $20,000, of which one-half was paid in cash, and the balance on a credit, secured by notes. In 1869 a bill was filed in the chancery court of Warren county, by Joshua Clark and Louisa N. Clark, his wife, John L. Lane and William Lane—the last two minors—who sue

by their next friend, the said Joshua Clark, against the said N. V. Lane, John L. Lum, Julius Hornthal, Marcus H. Blakemore and others, to set aside the conveyance above referred to, as a cloud upon the title of the complainants, as the heirs and devisees of the deceased. It is averred in the bill that the above named John L. Lane, William L. Lane and Louisa N. Clark, form rly Louisa N. Lane, since intermarried with the said Joshua Clark, are the only children of the said Edward M. Lane, deceased, by his wife, the said Laura, deceased, surviving, and are the children of the testator referred to in the will. Fraud in the sale and transfer .from Lane and Lum to Hornthal and Blakemore, is not charged, but the price is alleged to be inadequate, and that the sale was private and not by public notice. There was a demurrer to the bill, and of the causes assigned in support thereof, the following are quoted as presenting the only questions necessary to be discussed:

" 3. That by the terms of the said will, the property of the said Edward M. Lane, deceased, was, in the first instance, charged with the payment of his debts, and, therefore, there is necessarily implied a power in his executors to sell said property for that purpose."

" 4. That by the first clause of said will, the testator's said wife, Laura, was made sole executrix, with full power and authority to carry out the said will, and the first object for which her said power was created and conferred, was the payment of the debts of the testator, in settling which she was given full power to sell said property; and by the 12th clause of said will, the testator conferred, upon the death of his wife, on N. V. Lane and J. L. Lum, all the power and discretion to act in the premises, which he had therein before given his wife as sole executrix and guardian.

" 5th. That by the 5th and 7th clauses of said will the executors were authorized to sell said property, and it

was not the duty in equity of purchasers to see to the application of the purchase money paid by them.

" 6th. That it appears from the allegations of the bill and the deed, made exhibit 'B' thereto, that the said sale was for the benefit and best advantage of the estate, and that these defendants were innocent purchasers for a valuable consideration without notice of any misappropriation of the purchase money by the executors."

The demurrer was sustained and the bill dismissed, and hence the case comes to this court. It is assigned for error, only, that the court erred in sustaining the demurrer and in dismissing the bill.

The bill proceeds, and is sustained by counsel, on the theory, 1st. That the will confers no authority upon the executors to sell for the payment of debts, and therefore the sale of the real estate in controversy without a license from the probate court, was without authority, illegal and void; 2d. That the power to sell conferred by the will is discretionary, requiring the exercise of judgment, and therefore without the concurrence of both executors, both duly qualified according to law, as such, the sale was incperative and void; 3d. That the objects of the trust, at the time of the sale, had failed, so that the power of sale under the will could not be exercised by the executors; 4th. That under the power to sell and re-invest in lands and negroes, the executors could not sell to pay debts; 5th. That the respondents were purchasers with notice.

The special causes of demurrer present the following propositions:

1. That a power of sale is conferred upon the executors by the second clause of the will; 2. That the executors could not convey a valid title to the property in controversy under the sixth and seventh clauses of the will, freed from the directions to re-invest the purchase money as indicated in those clauses; 3. That the

defendants in error are innocent purchasers and are entitled to the protection of the courts.

In entering upon this discussion, I am not unmindful of the fact, that the questions involved are not merely of legal magnitude, but that they are also of practical importance. So viewing them, their solution will be attempted, not solely as abstract propositions, but with the effect of the adoption of the views expressed steadily in mind. The arguments of counsel have been carefully considered. No text book or adjudication bearing upon the question involved, at my command, has been overlooked. After such examination, the authorities seem to me to overwhelmingly indicate the views which 1 shall endeavor to express.

Of the arguments of counsel on both sides, I will say here that they are able, elaborate and exhaustive; but that there appears to me to be a tendency to, and a necessity for, theories in support of the claim of the complainants, based upon isolated portions of the will, sustained by a class of cases, rather than upon the whole will and all the authorities on the subject. And this impression has been strengthened by the extended examination which I have made. The error referred to consists in a misapplication of the cases distinguishing between mere naked powers and powers coupled with a trust or an interest, a mere charge of debts "*simplicitur*," a charge in a will whereby a trust is created, and a class of cases where, from the whole scope of the will, the intention to confer a power of sale is manifest; distinctions which the authorities will develop as I proceed.

The text writers inform us that, although from the time of the Norman conquest until the passage of the statute of wills, 32 and 34 Henry VIII, a subject of the realm, whence we derive our common law, generally speaking, had no testamentary power over land; yet the power of making a will of personal property appears to have existed from the earliest period. Hence,

originally, a "last will and testament" was.defined to
be "the just sentence of our will, touching what we
would have done after our death." But this definition
should be qualified, says a text writer, by adding "re-
specting personal estate." The disposition of lands,
subsequently permitted, was not considered so much in
the nature of a testament as of a conveyance, by way
of appointment of particular lands to a particular per-
son. Hence, this mode of disposing of lands was termed
a devise; primarily, a dividing or division; a devise in
writing being construed an instrument by which lands
are conveyed, thus showing the testamentary power
over acquisitions (which will be more fully discussed in
another place) to be as old as the method of disposition
itself, while "will and testament" had not at first pre-
cisely the same meaning as "devise;" but, in course of
time, these words have come to be applied indifferently
to a disposition of land or goods, which are now con-
tinually distributed, at the same time by the same
instrument; and a will or testament is now defined to
be, and is "the legal declaration of a man's intentions
of what he wills to be performed after his death," touch-
ing his real estate, or personal, or both. The restric-
tions thrown around the disposition of real estate, and
its non-liability to the payment of debts under the
feudal system are familiar, and need not be repeated.
At an early date, a devise of the use of lands only was
permitted, but therewith commenced adjudications con-
struing last wills and testaments; and these construc-
tions continued with the growth of testamentary rights
and powers, through all the advances of the latter, and,
to-day, constitute what are known and recognized,
wherever the common law is accepted, as rules of con-
struction of wills. From a devise of the use, at the
first, there subsequently followed a statutory recogni-
tion of the right to devise the freehold itself. And
though the fee was alienable, and for a long time the

land itself was not holden for debts, yet it was chargeable by will therewith, and could be made assets, either by the executor under the will, or by proceedings in chancery for that purpose. Eventually in England, as in all the states of our own country, lands, equally with personal property, were subjected to the payment of debts, the latter, however, being declared the primary fund for their payment, unles otherwise provided for in the will.

It is contended that the directions to pay debts in the will, are found in most wills, and are essentially unmeaning in those states where there is a statutory dedication of both real and personal property of decedents to the payment of debts as in our code; and particularly, that in this state, in the event of an insufficiency of personal property to pay the debts of the deceased, the executor must apply to the proper court for a license to sell real estate; unless, as in article 136, p. 455, Code of 1857, the land be, in terms, "devised to be sold;" or, in other words, that the rule of implication has no application, but is superseded by the above statute. .

This presents a question of great practicable importance, for the first time, before the courts of this state, a question affecting our future policy, so far as it can be affected by the courts, as to the administration of the estates of decedents, under powers conferred by wills. The question is this: Under the code of our state, can a testator, by will, confer power upon an executor to sell real estate for the payment of debts of the deceased, without an order or license from the proper court? And can this power be implied? In the solution of this question, heirs, devisees, legatees, creditors and all interested in the settlement of estates of decedents, are directly concerned. The question propounded, I supposed, was set at rest by the code. Article 136, p. 458, Code of 1857, is as follows: "Whenever any last will

and testament shall empower and direct the executor
as to the sale of property, the payment of debts and
legacies, and the management of the estate, the direc-
tions of the will shall be followed by the executor, and
no provision herein contained shall so operate as to re-
quire the executor to pursue a different course from that
described in the will, if it be lawful." And this statute
is recognized as correct in principle, in Currie & Naylor
Exr's v. Murphy et al. 35 Miss. 473. Nevertheless, it
is contended that to sell lands to pay debts, executors
must obtain an order of the probate court, as in article
86 *et seq.*, Code of 1857, p. 345. The cases, 1 How. 558;
1 S. & M. 208; 2 ib. 527; 2 How. 822; 4 S. & M. 187;
and 41 Miss. 370, are referred to in support of the
theory that the code, just quoted, changes the rule of
the common law upon this point, and subjects the
estates of decedents to settlement in the probate court,
though otherwise authorized by the will. An inspection
of those cases shows that they hold no such doctrine.
Indeed, the question under consideration, is not even
alluded to in either of those adjudications, nor was it
involved, or passed upon, even inferentially. And prop-
erly understood, there is no case in this country or in
England, which, upon principle, answers the questions
propounded in the negative. These questions involve
the consideration, whether, if any, and to what extent,
testamentary power over the disposition of property,
and the rules of construction of wills, have been modi-
fied, altered or superseded by statute. Let it be borne
in mind that I use the term, "rules of construction," as
contradistinguished from statutory regulations, public
policy, and principles of interpretation.

The policy of modern legislation has been to dispense
with the fictions and technicalities thrown around by
the feudal system; to prevent the accumulation of estates
to the extent formerly allowed; to render more simple
the disposition and transmission of property; and to

protect the rights of creditors.   And if there is any one
feature of modern legislation more distinct than     other,
it is the absolute disposition of property conferred upon
the owner, subject only to the claims of creditors.   This
legislation is founded in a wise policy as declared by
authors and statesmen, and is supposed to be peculiarly
American in its liberality, inducing immigration, enter-
prise and activity.   In my opinion, the rule contended
for would be a great public calamity, to be felt in every
county in the state, and a step towards an antiquated
policy, abandoned because of its hindrance to progress and
civilization.   The legislation of the different states has
been as varied as their number.   In Texas the will must
authorize, and the heirs must assent to, the settlement
of an estate without the aid of a proper court; but the
general rule is recognized that statutes are only operative
in the absence of testamentary power.   15 Cal. 256;
18 ib. 291;   Willard on Executors, 56, 342, note. In
the early history of South Carolina, the English doctrine
of legal and equitable assets were adopted in theory and
practice.   In Pennsylvania, the statute requires powers
in wills to be enforced through the orphan's court; yet
in the adjudications of the courts of that state, the rules
under consideration are fully recognized.   The statute
of wills of Rhode Island are the most simple, yet the
most sensible, I have examined.   They are even beau-
tiful in their simplicity, being brief yet comprehensive,
recognizing in direct terms the power of testamentary
disposition of acquisitions, implied powers in wills, and
the general right of a testator to charge his estate in
his discretion, subject to the claims of creditors.

   It has been attempted, in New York, to prescribe by
statute a rule to meet every state of facts, yet in no
state are the adjudications more full and explicit.   So
in England, there are late statutes on the subject of
wills, and though we were without either the acts or
the recent decisions of the courts of that county, I

venture to affirm that the rules of construction, referred to, remain undisturbed, except so far as changed by positive enactment, so expressly stated in O'Hara, 243.

Upon this branch of the case, I am not aware of any conflict of authorities, as the following points of decision will indicate. Subject to the statutory dedication of the entire estate, real and personal, of decedents, to the payment of debts, the testator may by will charge a particular fund and exonerate another. 1 Vern. 411, and cases cited in note; 5 Paige 318, 448, 469. Time and mode of sale may be directed by the will, notwithstanding the statute. 25 Wend. 224; 1 Edw. Ch. 273; 2 Paige, 202. As to the power under the will, probate is not necessary; it is a matter of contract and not of the courts. 7 Johns. Ch. 45. The probate adds nothing to the power given by the will. 4 Sandf. 374; 17 Johns. 296; 1 Bosw. 274; 38 Penn. St. 112; 25 Wend. 224. A sale may be legally made by the executor without an order of the probate court, when authorized by the will. 2 Dev. & Batt. 58; 2 Ves. 590; 1 Ves. Jr. 447; Curtis v. Fulbrook, 32 Eng. Ch. (8 Hare) 24. In 17 Ohio, 171, the will in terms forbade a public sale, and it was sustained. The powers granted by the will and those conferred by statute are clearly distinct. When given by the former the latter is superseded unless invoked. 4 Sandf. 374; 17 Johns. 296; 1 Bosw. 274; 8 Penn. St. 423; Hilliard on Ex'rs, 328. Power is from the will and not from the probate. 36 Miss. 170; 9 Cranch, 151; 11 Pet. 211; 2 Ohio, 127; 1 Lead. Cas. Eq. 790; 38 Penn. St. 113. The testator can charge different parcels of his real estate with his debts in unequal proportions, which will bind the heirs and devisees, though not creditors, if the whole is required for the payment of debts. 13 Gratt. 152; 27 Me. 338; 16 N. Y. 257; 7 Paige, 421. When a power of sale is conferred by will, the sale may take place under the power or by proceedings in court. 1 Lead. Cas. Eq. 790.

An exoneration of the personalty, or a transfer of the primary liability of one fund to another, may be made by the testator, not only expressly, but also by implication.   27 Me. 338; 16 N. Y. 257; 7 Paige, 421; O'Hara, 241.   The fact that a state law renders personalty liable to the payment of a testator's debts, will not affect the construction of a charge of debts in the will.   O'Hara, 243.   In Dodge v. Moore, 100 Mass. 335, the testator gave his wife the income, use and improvement of his estate for life; "and if the income of said estate should be insufficient for her support," the will was "that she shall use so much of the principal as she may think necessary."   *Held*, the right of the widow to sell the real estate, was "not contingent upon the insufficiency of the income, and if it were, she is herself the sole judge of the necessity."   The superior right of testamentary disposition of property, including a power of sale under a will, without a license or order of court is fully recognized in 3 Port. 9; 1 Gray, 569; 1 How. (U. S.) 150; Willard on Ex'rs, 56, 342, 343; 18 Penn. St. 179; 38 ib. 112; 10 ib. 271; 9 Pet. 477; 10 ib. 164; Hill on Trustees, 540; 36 Miss. 170; 9 Cranch, 151; 11 Pet. 211; 2 Ohio, 127; 32 Eng. Ch. 24; 4 Sandf. 374; 17 Johns. 296; 1 Bosw. 274; 3 Redf. on Wills, 135; 4 Kent, 328; 8 Barb. 18; 16 Pick. 111; 1 Seld. 136, etc.   See also Hill on Trustees, 536; 24 Miss. 395; 36 ib. 150.

Testamentary powers by implication resolve themselves in the main into questions of intention, and these again in the case at bar, into one of public policy, whether the Code (ch. LX) intended, and does, in fact, supersede the operation of implied powers in wills.   If in one instance, it does in all, a result which no lawyer, I apprehend, would be willing to assert.   The wisdom of such a policy, would, in my opinion, be more than questionable.   Judge Story, in Gardner v. Gardner, 3 Mason, 216, upon this precise point, uses this emphatic language: "It has been argued that there is something

in the peculiar jurisprudence of Rhode Island" (as it is argued in the case at bar, with reference to the code of Mississippi), " which repels this conclusion " (that the debts of the testator, were, by his will, charged upon his real estate), "or at least prevents its application to the case now before the court. But I am unable to perceive any sound reason for such an opinion. By a statute of this state (Rhode Island), the real estate of the testator is made generally chargeable with his debts upon a deficiency of the personal assets, and the executor may, upon proper application and proof, obtain a license from the proper court to sell so much of the real estate as may be necessary to meet such deficiency." (As in our state.)   " But this statute creates a general charge only in favor of creditors.   It does not prohibit the testator from making a particular provision, or appropriating a particular fund for the payment of his debts, which shall bind his heirs and devisees.   It does not in the slightest degree interfere with the ordinary construction of wills.   It leaves the testator at full liberty to dispose of his property upon such conditions as he may please, and liable to such charges as he may please.   And when he creates a particular fund for the payment of his debts, and exonerates all the rest of his estate from the charge, as to all other persons except his creditors, that fund becomes exclusively appropriated for the purpose, as much so as if he had devised it on the special trust.   Unless, therefore, the court were prepared to declare that the statute overturns all the rights of testators on this subject—a proposition too extravagant to be maintained for a moment—it is clear that the general liability of the real estate to the payment of debts, created by operation of law, does not destroy the specific charge of the same debts," etc.   Language could not well be more explicit and to the point.

The same views were declared in Charleton v. Wright, 12 Sim. 233, with reference to an act of the

parliament of Great Britain, by which the lands and personalty of British subjects resident in certain colonies were made, on their decease, alike assets for the payment of debts. It was specifically held that testamentary powers were not affected by the act. And later cases are to the same effect. The question in Hays et al. v. Jackson et al. 6 Mass. 149, was as to after-acquired lands, and the court said: "For the executor, by the probate of the will, has the administration of the testate estate, according to the will, and on undevised estate, he is also directed to administer agreeably to the provisions (of the statute of the state) respecting intestate estates. A charge of legacies was implied from the intention of the testator upon a construction of the will by the court in 1 McLean, 194. The conversion of lands into money may be implied without any express words directing a sale. 1 Lead. Cas. Eq. 790.

Willard on Executors, 56, refers to the testamentary power as " the unlimited power of testamentary alienation, which every person, not laboring under disability, possesses in this country over his own property," and which may be executed by the executor without an order of court. Ib. 342. In a note (p. 343) relative to the settlement of estates in courts of probate, it is said: "It is, indeed, a cumbersome, dilatory and expensive mode of making a man's real estate available for the payment of his debts. It is some relief to know that no man is obliged, as a matter of course, to leave his affairs in such a way as to render a resort to this proceeding necessary. It is consolatory to reflect that every man can, by a judiciously constructed will, provide for the sale and disposition of his real estate without a resort to the surrogate for authority. He may, if he pleases, make his real estate the primary, or the auxiliary fund for the payment of both debts and legacies."

In Cadburg v. Duval, 10 Pa. St. 265, the court say:

"The primary question is, whether, under a *bona fide* execution of a power to sell, conferred by the will of James S. Duval, the vendee of the trustees, on payment of the purchase money, could assert a title, discharged of the general debts of the testator, or whether the purchaser was bound to see to the application of the price in payment of the debts." After stating the statutes regulating the proceedings of the settlement of estates in their orphans' court, similar to our probate court, it is said: "These statutes are certainly pertinent to sales by executors and administrators in payment of debts. But in the absence of an expressed intention there is nothing in them to justify a conclusion that the legislature designed the repeal by implication of a long settled and prominent rule of property." Of the act of 1794, of which the act of 1832 is declared to be only a repetition, it is said: "It has, consequently, no reference to a sale made under a last will. *  *  * It can, therefore, have no influence on the determination of our question, unless it can be established that the law-makers intended by this enactment to cut up by the roots testamentary directions to sell for the payment of debts. This has not yet been pretended." It is very significantly asked by the court, in Spear v. Hannum, 1 Yeates, 380: "What sound principles of policy or reason can be shown discriminating between a *bona fide* sale of real estate by executors duly empowered, and a sale of personal estate by them, or by administrators in the common course of administration?" In the same case, in 2 Dall. 291, the court say: "It has been the constant usage (and usage is the best interpreter of the law) to give by will the power to sell lands for the payment of debts. The titles of purchasers under such powers have never heretofore been called in question, and they ought not now to be undermined. *  *  * There can be no satisfactory reason why a testator should not have the power to order a sale of lands for

for the payment of his debts, provided the exercise of it does not militate with the general principle of the lien, which the law has given to creditors.  *  *  *  If the former power had been to sell for the payment of debts, a *bona fide* sale would, in my opinion, be good against creditors and all the world." See further, as to the power of sale by executors, Hill on Trustees, 746 ; and by implication, Tiff. & Bull. 750, 762, *et seq.; * 3 Redf. on Wills, 136, 225, 569, § 140; the last reference distinctly declaring the doctrine contended for by defendants in error. See also Hilliard on Real Prop. 469, *et seq.;* 1 How. (U. S.) 150 ; Willard's Real Estate, 470.

Intention and implication are intimately blended. In fact the latter is based on the former. In the absence of express words, an intention amounting to evident demonstration, upon the whole will, furnishes the necessary implication. Or plain intention is the equivalent of express words. Again, implications arise upon intention. This rule is not confined to any class of cases, for it is impossible to specify any point of testamentary construction which is excluded from its operation; nor is it of novel or recent introduction, for the old authorities never denied the effect of the context to express a particular intention or control particular intentions. 1 Jarm. 441; 2 ib., 406. Thus, we imply a power of almost every character. A devise is often by implication. Terms or estates are frequently implied. Title will be implied in executors when necessary. An heir may thus be disinherited. Several implications are often indulged in the construction of the same will, such as a term for years in executors, a trust by implication, etc. An executor may be designated by implication from the terms of the will. A charge of debts or legacies may be implied. In Foster et al. v. Craig et al. 2 Dev. & Bat. Eq. 209, the will was simply this : " As to the disposition of my worldly estate, both real and personal, I make the following,

viz.: *Item.* I give and bequeath to my sister," etc. The testator then proceeds to make several devises and bequests, and concluded the disposition of his estate thus: "The balance of my property to be applied to the payment of my just debts. Should there be a surplus, it is my will and desire that it be divided equally among the heirs of my deceased brother, Samuel Foster, and the heirs of David Craig." The testator was in debt about $15,000. The executors sold the land in controversy at private sale to pay debts. The court say, "the testator does not, in so many words direct a sale of the balance of his property, but he says it shall be applied to pay his debts. It cannot be applied in that manner without a sale. A sale is therefore ordered by the testator himself, and the executors had an implied power to convey. The deed executed by the executors conveyed what title the testator had in the land," etc. Neither comment nor illustration can make the above case more completely applicable to the one under consideration than its own simple report.

That in will a sale may be directed by implication is recognized in Robinson v. Gaines, 21 Humph. 379. In Conover v. Hoffman, 1 Bosw. 217, a power of sale by implication for the purposes of the will is unqualifiedly declared. And so in 1 Paige, 331; 8 Barb. 18; 1 Seld. 136; 2 Lead. Cas. Eq., 198, *et. seq.*; 3 Redf. on Wills, 136, 235, 259, § 140, etc. Appointment of executors may be by implication. Willard on Executors, 38. When the power to executors to sell arises by implication, the power will equally arise in the survivor. Tiff. & Bull. 758. A direction to pay debts implies that they are to be charged on the land, else the claim will be inoperative. Wigram (O'Hara), 33. So of exoneration and oneration. Subject to the superior rights of creditors, the authorities are uniform, that a testator may charge one portion of his estate, or fund, and exonerate another. And such exoneration and oneration may be implied

when not expressed in words.  *Vide* the several authorities cited herein, and 5 Paige, 318, 448, 469 ; 15 Barb. 503 ; 27 Me. 338 ; 16 N. Y. 257 ; 7 Paige, 421 ; Hill on Trustees, 529, 533, 535, 540 ; 2 Williams' Ex'rs, 15, 31, *et seq.* ; Tiff. & Bull. 301, 303 ; 1 Rawle, 408 ; 2 Jarm. 406, top p., note ; Williams' Ex'rs, title, Exoneration.

The conclusion upon this branch of the case is, that the rules of construction of wills remain unchanged and unaffected by the statutory dedication of both real and personal estate to the payment of the debts of decedents. Among these rules of construction are those of implied powers, and other implications based upon intention. See further, 2 Barb. 65, 130 ; 1 Seld. 136 ; 38 Penn. St. 113 ; 9 Pet. 481 ; Hill on Trustees, 555, etc.; 2 R. I. 85 ; 1 Rawle, 408 ; 15 Barb. 503 ; 9 How. Pr. 512 ; 4 Kent, 319 ; Doug. 293 ; 3 East. 441 ; 11 Johns. 169 ; 2 Barb. 63 ; 2 Penn. Dig., " Powers," 421 ; 23 Pick. 313 ; 18 Cal. 291 ; 30 ib. 560 ; 13 ib. 591 ; O'Hara, 179, 206, 210 ; Williams on Real Prop., 216, top ; 7 Paige, 421 ; Hill on Trustees, 732, 733.

But the real question in this case, in my opinion, as in most cases of wills, is the intention of the testator, so that the first rule to be invoked is the familiar one, now axiomatic, that the intention of the testator, if it can be ascertained from the will, is the law of the executors, as it is of the courts, and of all concerned, provided such intention be not unlawful.  In ascertaining this intention, the whole will should, and when necessary, the surrounding circumstances may, be considered.  Indeed, the authorities say, that such a construction should be given to the will, if possible, as to impart meaning and substance to every expression of the testator therein.  And it follows that no part of the will should be declared without effect except in case of absolute necessity.  1 Jarm. 567.  The intention of the testator has been said to be the polar star to guide to the construction and execution of the will.  46 Miss.

447. And it is the law to executors. Ib. To this rule all others, except those founded on public policy and the necessity of sustaining established principles of law, are not only subordinate, but auxiliary. 10 Yerg. 20; 4 Humph. 210; 3 ib. 631; and other cases cited herein. The execution of a will in accordance with the intention of the trstator is founded on what is supposed to be a wise public policy, "*quod ultima voluntas testatoris perimplenda est*" (so that effect be given to the last will of the testator), has been a maxim of the English law from a very early period, to which may be added a sentiment of still higher antiquity, "*et interest reipublicæ suprema hominum rata haberi*" (and of the highest interest to the republic that the last wills of men should receive full consideration).

Blackstone says that "every will is construed with equal favor and benignity in courts, both of law and equity, and is expounded rather on its own particular circumstances, than by any general rules of positive law." 2 Black. Com. 382. And this remark of the learned author has impressed me with peculiar force upon a review of the authorities during this investigation. Not only are wills liberally construed to effect the intention of the testator, but an examination shows that each is expounded on its own peculiar circumstances. And the reason of the latter remark is as patent as its truth, viz.: because the intention of the testator, when it can be ascertained, is the law of the case. It has been well said that "rules apply in the absence of intention." Subject to the limits prescribed by statute, the principles of interpretation, and the established rules of public policy, the primary intention of the testator is to be sought and followed. Unlike these qualifications, however, the rules of construction are entirely subordinate to the intention. Even the careless and superficial need not be admonished against confounding the principles of interpretation

with the rules of construction. Hawkins on Wills; Wigram on Wills. The will is law, and the executor is bound to execute it according to the intention of the testator. 4 Cranch, 433. "The construction of a will must depend upon the intention of the testator, to be ascertained from everything contained within the four corners of the instrument." Hoxie v. Hoxie, 7 Paige, 192; Williams' Exr's, 1541. See further as to intention, Broom's Leg. Max. top, 409, *et seq.*; 3 R. I. 226; 2 ib. 80; 14 N. H. 215; 7 Fost. 275; 1 N. H. 163; 3 Ohio, 157; 15 ib. 559; 1 Ohio St. 307; 15 ib. 103, 251; 17 ib. 171; 14 ib. 129; 7 Barr. 16; 1 Rawle, 386; 3 Paige, 9; Willard's Real Estate, 504; Touch. 434; 2 Black. Com. 387; 1 Paige, 331; 3 Barb. Ch. 448; 6 Cruise Dig. (3d ed.) 48; 7 T. R. 531, etc.

I propose now to analyze the will in question, and precede this branch of the case by quoting from the very learned Chancellor Walworth, in Rathbone v. Dyckman, 3 Paige, 26 : " It was said by Sir William Jones, more than two hundred years since, that a case upon a will had no brother, and therefore that authorities in point in such cases could not be expected. This remark is also true of a great many of the cases, which arise at the present time, although the statute of wills as to real property, and the common law as to testamentary dispositions of personal estates, have produced an innumerable progeny since the days of the learned chief justice. In all of the anomalous cases courts are still compelled to resort to his general rule for exposition ; that is, the intention of the testator, so far as it can be ascertained from the whole will taken together, must govern."

I make this quotation for several reasons : 1. As an authority that the rules of construction of wills, by which the one at bar must be determined, are sanctioned by more than two centuries of judicial indorsement, notwithstanding the multifarious legislation on the sub-

ject of testamentary devises; 2. Because I have found
the words of Chancellor Walworth peculiarly and forci-
bly true; 3. And with the greater satisfaction, because
the writer has a personal knowledge of the many
graces and virtues of the departed christian lawyer,
and artless gentleman, and of the profound esteem in
which he was held by the profession of his day in his
own state.

With a view to the striking contrast between the
will before me, and one which confers only a naked
power, I shall present the former in several aspects.
There will be seen in this, powers, duties and trusts in
almost every line. Neither words of inheritance nor
of devise are used; but possession, with general power
of control and management, is given to the executors.
If title is not given to the executors, "dominion" over
it, as remarked in one case, is. 2 Exch. 592. Power to
lease, collect rents and receive profits, is, of course.
Upon much more slender cases, a fee or a term has been
implied in the executors. Hawk. 284; 4 Paige, 317;
7 Barb. 226; 1 N. H. 163; 4 Kent, 319; 8 Barb. 18; 2
ib. 63; 4 Hill, 492; 2 Johns. Ch. 252; 2 Comst. 316;
7 Paige, 192; 2 Comst. 19; 4 Denio, 388; Willard on
Real Estate, 245; 3 Paige, 9; 3 Washb. Real Prop.
449; 4 Kent, 540; 3 Barb. Ch. 77, etc.

The following analysis will show the leading thoughts
of the testator:

1. An anxious wish for an early payment of his
debts, which took expression in a positive direction to
that effect.

2. An exceptional exhibition of confidence in the
executrix and executors designated by him, as in the
following quotations from the will: "1. I hereby ap-
point my beloved wife, Laura, the sole executrix of this
my last will and testament, with full power and au-
thority, as hereinafter specified, to manage and control
my estate in the states of Mississippi and Louisiana,

and direct that she shall not give security for the performance of said trust, as long she remains unmarried." " 4. After paying the current expenses of my estate, and the maintenance of my wife and children, I direct that the annual surplus of money shall be invested by my executrix in the purchase of lands and negroes as a part of my estate, to be divided with my other property," etc. " 6. Should my wife desire to sell the said lot and residence, she is hereby authorized to do so, upon such terms and conditions as she may deem most advantageous, and to make a deed therefor as executrix, fully binding my heirs, the proceeds thereof to be invested in her discretion, either in the purchase of another residence, or in land or negroes," etc. " 8. I appoint my beloved wife, Laura, as guardian of my children, and direct that she shall not be required to give security for the performance of said trust, so long as she remains unmarried." " 12. At the death of my wife, I appoint, as guardian of my children, N. V. Lane, and as the executors of my estate, N. V. Lane and John L. Lum, and request that they may act without security. And I do hereby give them all the power and discretion to act in the premises, as I have given to my wife, as sole guardian and executrix."

3. The will is drawn upon the theory of an estate equal to the payment of the debts of the testator, the support of his family in affluence, advances to the children, and a surplus to be divided among the latter.

4. Except a limited amount for their support and education, and a further sum in the event of the marriage of either before twenty-one, the children were not to come into possession or enjoyment of their patrimony until the youngest should attain the age of twenty-one years, when the will directed the estate to be divided.

5. In the meantime, what was then supposed to be a fortune was placed in the care of his executrix, and

after her death, in the hands of executors, without security, with " full power and authority " to " manage and control " the " estates " of the testator in two states, under positive injunctions to pay debts, which it now appears were large; with "full power" to sell and invest according to the terms of the will; and, besides, the executrix and one of the executors were designated guardians, successively, of the children, also without security. .

6. Thus, after paying the debts of the testator; after supporting the family and educating the children; after paying the costs and expenses of conducting the estate; and after the sales and investments authorized by the will, during the years intervening between the death of the testator and the majority of the youngest child, the estate, whether decreased or diminished, colossal or only an uncertain " residue and remainder," after these years of management and control, with full power, authority and discretion in the executrix and executors, was to be divided equally between the children.

7. On arriving at the age of fifteen an account was directed to be opened, and on reaching twenty-one, an equal share of the estate was to be set off to them, or in case any of them married before that age, property to the amount of $10,000 was to be given to them, to be deducted when a division would be made at some indefinite period after the youngest child attained twenty-one.

8. And this will, exhibiting rare ability, skill and foresight, as well as to business as to the law of wills, by expressions, as well as in law, created trusts and active duties, if not an interest and an estate in the executors and trustees.

But, lastly, the testator palpably intended his estate to be settled by his executors, without a resort to the courts.   And this would be the preference, having experience of probate courts, and who had friends in whom he would confide as Mr. Lane had.

This will may also be analyzed in another mode, showing the powers conferred upon, and duties required of, the executors. 1. Full power and authority to control and manage the estates of the testator in the states of Mississippi and Louisiana, without security; 2. To pay the debts of the testator as soon as possible; 3. To the mother of the testator, $500 per annum was to be paid; 4. Payment of the current expenses of the estate, and maintenance of the family of the testator; 5. The investment of the surplus money of the estate; 6. Authority to sell the house and lot in controversy, and to invest the proceeds—the conveyance to bind the heirs; 7. As the children arrived at the age of fifteen, an account was directed to be opened between them and the estate; 8. The estate was directed to be divided equally between the children, to be set apart to them on arriving, respectively, at the age of twenty-one years; 9. Should any of the children marry with the consent of their guardian, before twenty-one, ten thousand dollars to be deducted from their share when a division should be made; 10. Necessarily, the power and duty to lease, to collect interest and rent, to insure, to make repairs, etc., is expressed or implied.

But a third analysis will present what are, to my mind, conclusive features: 1. Full power and authority to manage and control, without security; 2. The payment of debts, which must be taken in connection with the fact known only to the testator, that he was then largely in debt, and well knew the purport of his words; 3. Power to invest surplus money, to sell the property in controversy, and to invest the proceeds—thus directly involving the power to lease and collect rents, as well as of sale,—to make advances, and for final division of the estate; 4. As each of the children arrived at majority, an equal share of the estate was to be "set apart to them respectively," showing that the possession, if not the fee, of the real estate was in the

executors; 5. If any of the children married before twenty-one, the executors were directed to give them $10,000, which, in view of the investments required by the will, involved a power to sell real estate to raise the money, and the consequent implication of a fee, temporarily, at least, in the executors; 6. The powers given to the executrix were also conferred upon the executors. These powers are found in the 1st, 2d, 3d, 4th, 6th, 7th and 11th clauses of the will, and are above alluded to; 7. My construction of the 7th clause of the will is the same as though the testator had said: "I invest my executors, hereinafter named, with power to sell my residence and lot, upon such terms and conditions as they may deem most beneficial to my estate, and also with power to invest the proceeds in lands and negroes, to be divided as my other property hereinafter mentioned,"—the power to invest being entirely independent of the power of sale, and the power to divide necessarily including the power to sell; the testator, in the fourth clause of the will, in terms, recognizes the creation of a trust; 9. Thus, we have a will which creates a trust, the executors being also trustees, occupying that relation both to the children of the testator and his creditors, and which requires duties, the execution of which might require a fee in the executors, and this the courts would imply if necessary; 10. Clearly the testator intended to have his estate managed and settled without the aid of the courts, and for this purpose the will confers, either directly or by implication, all the necessary powers, as I construe it, looking to the whole will for the intention which governs; 11. The division of the estate among the children, according to the 11th clause of the will, confers, by implication, a power of sale, if necessary, for such division; the advances to the children might also require a sale to raise the money, if there was none on hand; and the payment of debts, in view of a large undisclosed indebt-

edness, might also ripen into a necessity for a sale. And lastly, I think the will confers full powers for all the purposes of the will, without the aid of courts.

I observe of this will, here, while passing: 1. That of numerous precedents examined in this investigation, the will under review—the most complete of any yet seen, with limited directions excepted—invests the executors with all the rights, powers, authority, and discretion possessed by the testator. In fact, with the exception named, the executrix and executors are substituted in the place and stead of the testator. 2. This will confers a power coupled with a trust, if not an interest therein. The case at bar is wholly unlike that of Bartlett v Sutherland, and governed by another class of cases; 3. Unless it is held that lands must be expressly and in words "devised to be sold," excluding all implications of a devise for such a purpose, this case is manifestly, and almost literally, within the provisions of article 137, Rev. Code of 1857, p. 458; 4. This is not the case of a will which confers a mere naked power; and hence the error in which the advocates of the bill have fallen; nor of a simple charge to pay debts; 5. This will confers an active trust, and can not be likened to, and correctly solved by, cases of mere naked power, which are no more and no less than a plain power of attorney; neither is this case governed by the rules applicable to a simple charge; 6. The charge and the powers in this will are connected with trusts and duties, if not interests. Wherefore, the result I have reached.

It is, however, sought to make this case turn upon the second clause of the will. And this branch of the case I propose now to consider.

1. I suppose it to be unquestioned, that if a will gives a power of sale to pay debts and legacies, or for distribution without stating by whom the sale is to be made, the executors, if any are named in the will, take the power by implication. So, if a testator orders his real estate

to be sold for the payment of his debts, without designating who shall sell, a clear trust is thus created, which a court of equity will execute in the absence of a donee of power, either direct or implied, by the will. Indeed, these rules have become legal axioms. The rules and the reasons upon which they are based, are given in section 1060 of Story's Eq. Jur., vol. II.

2. It is equally certain, I apprehend, as a general rule, that a power or a devise may be implied, as well as direct; and that a power or a devise by implication, is as legitimate, legal and effectual, as though expressed in positive language. In fact, there is no distinction in legal effect. But it is objected, that upon a mere charge to pay debts, there is no implied power of sale. As to which I shall refer hereafter at length, and will only observe here in regard to this objection, that I do not consider it well taken; because the case at bar does not fall within the class of cases of a mere charge, *simplicitur*, to pay debts; but one wherein the will, as a whole, confers not only a power, but a trust, if not an interest, and so is governed by a class of authorities to which I shall refer fully. As I conceive, justice can be done in this case only by the consideration of the entire will. Correct conclusions cannot be drawn from an isolated clause, as it seems to me is necessary to sustain the bill of complainants.

The second clause of the will is as follows: "I wish all my debts to be paid as soon as possible, and I particularly specify the following: First, the amount due by my father to the Mississippi Conference, which I have assumed to pay, about $1,200 or $1,300; second, the amount I owe the Methodist Book Concern in the city of Nashville, about $3,000; third, I direct that my mother shall be paid $500 per annum during her life, so long as she requires it, for the performance of which she already holds my obligation."

It now appears that the testator was also otherwise

largely indebted, of which, at the time, it would be unjust to him to suppose he was ignorant. The presumption of law is, that he knew his financial condition, and made his testamentary dispositions in view of such knowledge and conditions. Wallace v. Wallace, 3 Fost. (N. H.) 149. The will affords evidence of more than ordinary intelligence, and it may be supposed the testator well knew the force and import of the directions to pay his debts as soon as possible. As a business man he was well aware of the uncertainties of wealth, and in view of the exceptional confidence expressed in the executrix and executors, he must have intended to repose in them the same rights and powers existing in himself, to act, to manage and control, to sell and invest, and dispose of his estate, under all the changes to which fortunes and financial operations are subjected. If, after the execution of this will, the testator had been asked whether, in the event of misfortunes and unexpected losses, he intended to confer on his executors a power of sale, I must believe he would have pronounced the provision of the will ample for all emergencies, and that the confidence expressed in his executors was not mere form, but was intended to express his faith in their wisdom and judgement under all circumstances. In this view, I think I am warranted by an examination of the will. I cannot bring my mind to the conclusion that the testator, as a man of education, experience and intelligence, extended his confidence to the executors of his choice, only so long as his affairs were prosperous, and that the powers given to them were to be withdrawn in the moment of adversity. On the contrary, the will indicates, to my mind, an intention to confer powers, which were to be operative and effective for all purposes, under all circumstances, and which, with the qualifications expressed, were commensurate with the powers and discretion of the testator himself. He was then largely in debt, as he knew.

He manifestly intended to withdraw the settlement of his estate from the courts, and to confide it to his executors. In view of the whole will and its purposes, we may see clearly the powers conferred by the second clause. If the property in controversy was not expressly " devised to be sold," the testator palpably intended to confer a power of sale, if necessary, to be exerted for any or all tne purposes of the will. He evidently intended to confer unlimited power and discretion, for all purposes and under all circumstances, except as expressly qualified by the will.

But, it is insisted that the general direction to pay debts in this instance is inoperative, in view of the statute (Code of 1857, ch. LX); that these words do not confer in this will a power of sale by implication, or that such implied power is not operative, and that a sale of the real estate was unauthorized, except by an order of the proper court.

It is well understood that the 3 and 4, Wm. IV, ch. 104, made real estate of decedents assets for the payment of all the debts of the deceased, thus changing the rule of the common law, and that this legislation has been followed by the American states. And it is incontrovertible, that prior to this statute, the simple direction to pay debts, or the expression of a wish for their payment, contained in a will, created a charge upon the real estate of the testator. From this point, the views of myself and my associate diverge.

The authorities from which I deduce my conclusions are, to me, so overwhelming, that I am compelled to submit my views to a discriminating and just profession. I can not agree to a declaration, that the words used in the second clause of the will under consideration, taken in connection with other portions of the will, and the evident intention of the testator, would not, in England, have given to the executors a power by implication to sell real estate, nor that, in this country, resort can not

be had to implied powers, because of the statutory dedi-
cation of real estate to the payment of debts of dece-
dents, in all cases where the personal estate is insufficient
for that purpose. And I should be unwilling, both on
principle and as an unwise public policy, to adopt the
rule in this state that, in a case like the one under con-
sideration, the doctrine of implied power has no appli-
cation. In an examination of the English precedents
on this branch of the case, the first feature that will
attract the attention is the doctrine of legal and equit-
able assets, and the consequent practice in that country.
On this subject, Redfield (vol. iii. p. 237) says: "The
distinction between legal and equitable assets, which is
considerably discussed in many of the English cases, is
not very material to be considered here. The distinc-
tion has generally been regarded as founded upon the
nature of the tribunals by which they are administered." On page 238, this author continues: "It does
not readily occur to us at the moment how the distinc-
tion between legal and equitable assets can be of any
practical effect in the settlement of estates in this
country, where all the property of the testator is pri-
marily liable for the payment of debts, and where, by
consequence, real estate may equally be reached with-
out any direction of the testator for that purpose as
with it. We conclude," he adds, "that all assets,
whether legal or equitable, which are in law applicable,
in any form, or by any court, to the payment of debts,
must be applied in the du course of administration,
without regard to any special charge in the will." In
this view, I concur with Mr. Redfield, with the qualifi-
cation of the last paragraph, that a special charge in a
will is good and must control, subject only to the rights
of creditors. Mr. Redfield only states a truism, when
he says (vol. iii. p. 238): "The real estate of the de-
cedent, by force of th statutes in all the American
states, becomes assets in the hands of the personal rep-

resentatives, for the payment of debts in all cases where the personal estate is insufficient for that purpose, and it is not requisite that the personal estate should appear to have been insufficient to pay the debts at the time of the decease of the testator or intestate."

Mr. Story (vol. i. § 552), referring to the foregoing subject of legal and equitable assets, says: "They are called equitable assets, because in obtaining payment out of them, they can only be reached through the aid and instrumentality of a court of equity."

The views which I entertain as to the effect of a charge of debts and implied powers, are those furnished by Mr. Redfield, vol. iii. p. 239:

"20. So, too, where the debts and legacies are made a charge upon the real estate, that will be regarded as *quasi* assets in the hands of the executor, and he will be authorized to dispose of the same for the purposes of the will, in the manner therein indicated, either expressly, or by reasonable implication."

"21. And in both the exigencies pointed out in the two preceding paragraphs, the personal representative must pursue, with reasonable strictness, the power conferred upon him in the one case by the terms of the will, and in the other by the orders and decrees of the probate court under the statutes, in disposing of and converting such real estate into money, and applying the avails to the proper object."

The case at bar, on the part of the defendants in error, is, if I understand his language in the last quoted paragraph, precisely within the views of Mr. Redfield. So of the case of Doe v. Hughes, 6 Exch. 223, cited in support of the complainant's case. That was an action of ejectment. The will put in evidence was as follows: "I subject and make liable all my real and personal estate with the payment of my just debts, funeral and testamentary expenses and charges thereon, and the legacy hereinafter by me bequeathed; and subject

thereto and to the payment thereof, I give and devise the rents and profits of all and singular my messuages, farms and lands (except my Bala houses), situate, etc., unto my wife, Ann Hughes, for and during her natural life," with power to charge one-half of certain of the parcels devised; and after her death, to Hugh Hughes, forever, certain of his estates; and to others named, certain other estates; to another five pounds; and to his wife, who was made executrix, all the residue of his estate. The suit was by the heir to recover the Bala houses of a purchaser who bought them of the executrix at private sale. Plainly, the Bala houses were, by the will, expressly excepted from the devise, and from the charge of debts, and so passed to the heir, as manifestly intended and clearly expressed by the testator. It was insisted that the executrix had, by the will, a power by implication to sell the Bala houses for the payment of debts, whereas the debts were specifically charged in terms upon the other estates devised; or by a clear implication, if not express words, the Bala houses were exonerated. A verdict passed for the plaintiff, and in the Exchequer Pleas, Parke, B., said: "The question is, whether the executrix of this will, who appears to have been in want of money for the purpose of paying the debts and funeral and testamentary expenses, had power to sell or mortgage the Bala houses for the purpose of raising that money. * * * Upon the argument of this case, the several authorities upon the subject were brought before us; and it was contended, on the behalf of the defendant, that the effect of a charge upon the real estate with the debts was to give to the executrix an implied power of sale. * * * One class of cases shows that by a devise to trustees of the real estate charged with the testator's debts, the trustees have thereby imposed upon them the duty of raising money to pay those debts; for, as the estate is given to them, they can, through the means of the estate,

raise money for the payment of those debts.   Another
class of cases decides that if, from the whole purview
of the will, it appear to have been the intention of the
testator that his real estate should be sold, and the pro-
ceeds of that real estate are to be distributed for the
purposes for which it is given, which the executor
alone by law could perform, then there is an implied
power given them by the will to sell the real estate,
and that the executor who is to distribute the money is
to sell the estate.   *   *   *   But, upon looking through
the cases, not a single authority is to be found, which
says that a simple charge of the estate with the pay-
ment of the debts, does more than make a charge upon
the estate in the hands of the devisee, if the estate is
devised, or upon the estate in the hands of the heir-at-
law, if the estate devolves upon him by the law of
inheritance."

If the second clause of the will in the case at bar
constituted the entire will, it would come nearer to " a
simple charge," within the last paragraph above quoted,
whereas, its " whole purview " locates it within the
second of the above class of cases as defined by Baron
Parke.   As sound as this doctrine may be conceded to
be " on the legal question," it was nevertheless a sur-
prise upon the profession of England; its announcement
created unfavorable criticism ; and it proved to be con-
trary to the opinions of some of the most eminent
English judges.   Perry on Trusts, § 803.   Its true basis
and justification may be averred to be in this, that it
was in accordance with the plain intention of the
testator, as unequivocally expressed in the will.   The
difference between the will in that case and the one at
the bar is wide and apparent.   There, by the very
letter of the will, the portion devised to the widow and
executrix was made subject to the charge and payment
of debts, and by implication, if not by the plain letter
of the will, the Bala houses were exonerated.

Mr. Perry, in his work on Trusts, § 803, says: "Mr. Lewin thinks that Doe v. Hughes was a sound decision upon the legal question, but that the executors have an equitable power of sale, and the holders of the legal title are trustees for him." Such was the whole opinion of Mr. Lewin as to the decision in Doe v. Hughes, which was partially acquiesced in as a rule, as stated upon the legal question, but it was not accepted as a guide in courts of equity. If this be correct, then in the case at bar, the executors of Lane had an equitable power of sale, at least, and if the heirs have the legal title, they ought to be decreed to convey to the purchaser. The affirmance of the decree of the chancellor substantially produces that result. See authorities herein.

In section 802, Mr. Perry says: "The question has been raised, who has the power to sue and discharge for the purchase money in case a testator charges his real estate with certain payments, and then devises it to trustees upon trusts which do not require a sale? Can the executor sell? A few cases seem to intimate that he can." Shaw v Borren, Kem. 559; Ball v. Harris, 8 Sim. 485; 4 Myl. & Cr. 264; Gosling v. Carter, 1 Coll. 649; Robinson v. Lowater, 17 Beav. 592; 5 De G., M. & G. 272; Eidsforth v. Armstead, 2 K. & J. 333; Wrigley v. Sykes, 2 Beav. 337; Story v. Walsh, 18 ib. 568; Colyer v. Finch, 5 H. L. Cas. 905; Hodkinson v. Quinn, 1 J. & H. 310; Trutham v. Cotton, 34 Beav. 615. "But, it is said, a mere charge cannot give executors a legal power," citing only 6 Exch. 222. "On the other hand, it is said, that there is no difference between a charge and a trust for the payments to be made, and therefore trustees take the legal estate subject to all the trusts, and among others, the trust of making the payments charged." Elliott v. Merryman, Barn. 81; 1 Lead. Cas. Eq. 40; Ex parte Turner, 9 Mod. 418; Jenkyns v. Hyles, 6 Ves. 654; Bailey v. Elkins, 7 ib. 323; Wood v. White, 4 M. & C. 482; Commissioners,

etc. v. Wybrants, 2 J. & L. 197; Forbes v. Peacock, 12 Sim. 527. "This seems to have been the opinion of Lord Hardwicke." *Ex parte* Turner, 9 Mod. 418; 5 H. L. Cas. 902. "And" he adds in a note, "Mr. Lewin is of the same opinion."

In section 803, p. 746, Mr. Perry has this: " If the heirs are under disabilities, as infants or married women, can the executors sell the estate for the payment of charges upon it ? " In Doe v. Hughes, the court held that a charge had no operation in law, but must be enforced in equity, from which it follows that the executors could not sell without a license or decree of the court. "This case," continues Mr. Perry, "has been much criticised, on the ground that where a direction to sell and make payments is given, but no person is named, the executors have the power to sell by implication, and so it is thought, that where there are charges upon real estate, there is an implied power of sale in the executors." 17 Beav. 601; 21 ib. 337; 18 ib. 568; 27 ib. 553; 1 Johns. & H. 309; 29 Beav. 123; 1 De G., F. & J. 127; 34 Beav. 615; 1 M. & W. 630; Tilden v. Hyde, 2 S. & S. 238; 4 Wend. 44; 5 De G. & Sm. 415; 2 K. & J. 332; 5 H. L. Cas. 922. Upon this last point, Mr. Perry contents himself with a reference to the cases without expressing an opinion.

If the English cases on this subject, subsequent to Doe v. Hughes, are correctly reported in Lead. Cas. Eq., that case is in conflict with the decisions, both before and since. There was an attempt to reconcile these opinions by the suggestion that the court, in Doe v. Hughes, dealt only with the legal question, but I do not see how, in our courts, that can help the complainants in the case at bar. I regret not to have access to the recent statutes and adjudications of Great Britain. With the best information I am able to obtain, however, the English authorities are overwhelmingly opposed to the theory on which this suit is based. As

reported in 1 Lead. Cas. Eq. 120, Sir John Romilly, M. R., in Robinson v. Lowater, 17 Beav. 592, says: "The case of Doe v. Hughes is relied upon to show, that the executor could not make a good title to sell, had no authority to sell vested in him. I find it difficult to reconcile the decision in that case with numerous authorities to be found on this subject in chancery, amongst which I may refer to Ball v. Harris, 4 Myl. & Cr. 264, where Lord Cottenham observes that a charge of debt is equivalent to a trust to sell so much as may be sufficient to pay them; Forbes v. Peacock, 12 Sim. 541, which on this point is not affected by the reversal of the decision; 1 Phil. 717; and to the case of Gosling v. Carter, 1 Call. 644. Before the case in the Exchequer, I had considered the law to be, that a charge of debts on an estate devised, gave the executors an implied power of sale, because, to use the expression of Sir J. Leach, in Benetam v. Wiltshire, 4 Mod. 49, the power to sell is 'implied,' from the produce having to pass through their hands in the execution of their office, as in payment of debts or legacies." The executor in that case sold real estate in virtue of an implied power, under a will containing a mere general charge of debts, of which the purchaser had notice. The sale was sustained by the Master of the Rolls, and on appeal to the lord justices of the court of appeals, that judgment was affirmed. It is stated, that during the argument of that case, the Lord Justice Knight Bruce, with reference to Doe v. Hughes, put the following pertinent questions: "Does that case deal with anything beyond the question of the legal estate? Can it govern the present, which is an application to a court of equity to give effect to a charge?" And Justice Turner asked, "Does a charge of debts amount to a direction to institute a chancery suit? Would not that consequence arise from holding that the executor could not sell?" Which questions were quite as pertinent as

those of Lord Bruce. In pronouncing the judgment in that case, it was said: "On the face of this will, therefore, it was not the intention of the testator that the money should be raised by the devisees. Then who was to raise it? Surely the persons who would have to apply the fund. It seems, therefore, upon the whole scope of this will, without reference to the cases decided upon the subject, that in this case, at least, it was the intention of the testator that the money should be raised by the executor, and if by the executor, then the executor must be considered as invested with all the powers necessary to pay them." 1 Lead. Cas. Eq. 121, and cases there cited; 21 Beav. 337.

Referring to these general directions in wills to pay debts, Lord Chancellor Brougham, in Jones v. Scott, 1 Russ. & Myl. 268, said: "I cannot, without violence to probability, suppose that all men, professional as well as laymen, have continued for so long a time to put the clause into their wills, when they have no real property to dispose of, without any sense or purpose. That would be to reject the words, as devoid of meaning; whereas, the rule is, rather to adopt that construction which will give force and effect to every part of the instrument.

In Wood v. White, 4 Myl. & Cr., decided in 1839, Lord Chancellor Cottenham said: "If a testator merely charges his lands with the payment of his debts, this is so equivalent to a trust for that purpose, that a purchaser is not bound to see to the application of the purchase money." See also Eland v. Eland, ib. 420.

The will, in Newman v. Johnson, 1 Vern. 45, was: "My debts and legacies being first deducted, I devise," etc. It was held by the Lord Chancellor, "that this should amount unto a devise to sell for the payment of debts."

The vice-chancellor, in Clifford v. Lewis, 6 Mod. 33, says: "In this case the testator begins his will thus:

' I will and direct that my just debts, funeral and testamentary expenses be paid and satisfied; ' and he then proceeds to dispose of real and personal estate. The question is, whether this expression, with which he had commenced his will, imports a general and primary purpose that the payment of the debts, funeral and testamentary expenses, should precede the subsequent dispositions which he has made of his property? In Finch v. Hattersby, the will began thus: 'First, I direct that my debts, etc., etc., be paid.' In Lee v. Warrington, '*imprimis*, I direct my debts to be paid.' Both these wills may be read thus: 'In the first place, I direct my debts to be paid.' This testator has, in fact, in the first place, directed his debts to be paid, and I cannot attribute to him a different intention, because in the form of the expression he has not remarked it in the first place." A devise of lands after the payment of debts is a charge on the land; until debts paid, testator gives nothing. 3 Ves. 739, cited in 9 Pet. 470.

The will, in Price v. North, 19 Eng. Ch. 84, commences in these words: "First, I will that all my just debts, funeral expenses, and the costs and charges of proving this my will be fully paid and satisfied." *Held*, to create a charge. Note 2, p. 87.

Lord Eldon, in Bailey v. Ekins, 7 Ves. Jr. 321, said he was confident, Lord Thurlow's opinion was, that a charge is a devise of the estate in substance and effect *pro tanto* upon trust to pay debts."

In Gosling v. Carter, 28 Eng. Ch. 644, decided in 1845, it was distinctly declared, upon a simple charge in a will directing the payment of debts, "that the executor and executrix, as debts are admitted to have existed at the time of sale, had power to sell." That a simple charge is a devise *pro tanto*. See 2 Bro. Ch. 79, note *a*, and note 1, p. 204. See also 4 Johns. Ch. 651, wherein Chancellor Kent affirms this doctrine. The

Lord Chancellor Cottenham, in Ball v. Harris, 18 Eng. Ch. 264, decided in 1839, refers to Shaw v. Borren, 1 Kun. 559, and distinctly declares the doctrine, that an implied power of sale exists on a mere charge of debts.

Elliott v. Merryman, Barn. Ch. 78; (1 Lead. Cas. Eq. 97), was a case of a mere charge of debts on property devised to one who was made executor. The latter sold real estate so devised, at private sale, without the order of any court. Subsequently, creditors of the testator sought to enforce their claims out of the property thus charged and devised. The complainant's bill was dismissed, and, in the course of the opinion, the court say: "The present case indeed does not fall within either of these rules, because here the lands are not given to be sold for the payment of debts, but are only charged with such payment. However, the question is whether the circumstances make any difference. And his Honor was of the opinion that it did not. And if such a distinction was to be made, the consequences would be, that whenever lands are charged with the payment of debts generally, they could never be discharged of that trust without a suit in this court, which would be extremely inconvenient. No instances have been produced to show that in any other respect the charging lands with the payment of debts differ from the directing them to be sold for such a purpose; and therefore, there is no reason that there should be a difference established in this respect. The only objection that seemed to be of weight with regard to this matter is, that when lands are appointed to be sold for the payment of debts, generally, the trust may be said to be performed as soon as those lands are sold; but where they are only charged with the payment of debts, it may be said that the trust is not performed till those debts are discharged."

Where there is a charge for payment of debts, generally, or a charge followed by specific dispositions of real estate, the purchaser is not bound to see to the applica-

tion of his purchase money; for, as before observed, the charge is equivalent to a trust, and the same effect will be given to it by a court of equity, as if a direct devise had been made to trustees for payment of debts. 1 Lead. Cas. Eq. 109.

In Ball v. Harris, 4 Myl. & Cr. 264, Lord Cottenham held that a charge by will of real estate with the payment of debts, generally, authorized a trustee, who was also executor, to whom, after imposing that charge, the testator had devised his estates upon trust for other persons, to make a mortgage (being a conditional sale) of lands purchased under a power, and conveyed to him upon the trusts of the will, and exempted the mortgage from liability, to see to the application of the mortgagee money. " The real question," observed his Lordship, " is whether the decision in Shaw v. Borren is right. I have carefully considered the judgment of the Master of the Rolls upon this point, and I entirely concur with him upon it; the point indeed has been long established. It rose directly in Elliott v. Merryman, and as there laid down has been recognized in the several cases referred to by the Master of the Rolls, to which may be added the opinions of Lord Eldon, in Bailey v. Ekins, and Dalton v. Herron ; for although the point in some of the cases was, whether the purchaser was bound to see to the application of the purchase money, the decision that he was not, assumes that the sale was authorized by the charge in the will of the debts upon the estate ; that is, that the charge of the debts upon the estate was equivalent to a trust to sell for the payment of them." 1 Lead. Cas. Eq. 110. Forbes v. Peacock, 1 Phill. 117 (1846), is most strikingly like the case at bar, as it is, in my opinion, conclusive on several points under discussion.

In a note to 2 Jarm. 371, it is said that in the cases of Ball v. Harris, and Shaw v. Borren, " the doctrine that a general direction to pay debts. charged

them on the real estate, was treated as too clear for discussion; the only contest being whether such a charge conferred implied authority to sell on the person taking the legal estate subject to certain trusts, which was decided in the affirmative."

Upon the English authorities, it seems to be clear and indisputable, 1. That a simple charge of debts upon real estate is a devise *pro tanto;* 2. That the mere charge confers upon the executor a power of sale by implication; 3. That the English adjudications upon this subject may be divided into at least three classes: those denominated a mere charge, " *simplicitur*," and the two classes cited by Parke, B., in Doe v. Hughes, *supra;* 4. If wrong in my second conclusion above stated, the case at bar is clearly and beyond all question within the class defined in Doe v. Hughes, wherein upon the whole will the power of sale is implied; 5. There is no difference in legal effect between a devise of land to be sold and a charge of debts by which a power of sale is implied.

To my mind the American authorities are no less satisfactory and conclusive. 3 Redf. on the Law of Wills, 238, has been referred to for the declaration, that " in this country, there is no necessity to resort to implied powers, as the real estate of the deceased, by force of the statutes in all the states, becomes assets in the hands of the personal representatives, for the payment of debts in all cases when the personal estate is insufficient for the purpose." I have searched the authority cited, in vain, for such opinion. It is true that the statutes in all the states dedicate both real and personal property of decedents to the payment of their debts. It is no less true that, when power is not conferred upon the executor, by the will, either in express terms, or as Mr. Redfield elsewhere says, " by reasonable implication," to convert the realty into money, without an order of the proper court, in such

case the statutes provide a remedy. It is not necessary, therefore, to resort to implied powers of sale to pay debts; and as to that matter, there is no " necessity " to resort to direct powers; for in either case the executor may resort to the probate court. The question is, can the testator, by will, confer upon the executor power, express or implied, to settle the estate without a resort to the court? The term " devise" implies a power of disposition. But see authorities elsewhere. 2 Dev. 288, is also referred to in support of the foregoing declaration, but this volume is not in the state library, and I have searched for it without success.

Perry on Trusts, 744, 746, has been elsewhere quoted at length. Fully quoted, Mr. Perry and Mr. Lewin advance doctrines which I construe as opposed to the theory of the complainants. Hawkins on Wills, 152, is also cited. Turning thereto, I find only this truism, which I copy entire: "And a direction that executors shall sell lands for the payment of debts, unaccompanied by a devise to them, confers only a power, and not an estate." This declares simply, that in the case stated an estate is not conveyed. In the case at bar, however, it is not a " mere naked power" which is conferred, but one coupled with a trust, if not an interest. Several cases with marked similarity to this, where no words of inheritance nor of devise were contained in the will, yet were held to convey an interest and an estate. Such were the cases of 2 Comst. 19; 2 Washb. Real Prop. 436; 23 Pick. 313, etc.

Doe v. Shatter, 8 Ad. & Ell. 905, also cited in support of the theory of complainants, is merely this: Devise of lands to the wife for life; after her death to be sold by executors. The' opinion of the court occupies four lines, and is as follows: "Lord Denham, C. J., now delivered the judgment of the court: We are of opinion that in this case, nothing more than a power was given to the executors. The testator merely devised, in sub-

stance, that the lands should be sold by the executors. There will consequently be no rule." And the decision was sound, in accordance with all the precedents, and a striking illustration of a case of a mere naked power, or power of attorney, with no duty or trust. Clark v. Riddle, 11 Serg. & Rawle, 812, cited by counsel for complainants, distinctly recognizes the doctrine, that an order or direction in a will for the sale of land may be express or implied. That case simply, and very correctly, held that upon the will therein, there was neither an express nor an implied direction to sell. In fact, the will positively negatived an intention of a sale.

Perry on Trusts, p. 447, § 499, is cited for the rule, that, "If a power of sale or any other power is given to two or more persons by name, with no words of survivorship, and one dies or refuses to act, the others can not execute the power." But it is further stated in the same section: "But where the power is given to the trustees as a class, or to the office of trustee, whether their names are mentioned or not, the power will continue and will be exercised as long as there are more trustees than one, although there are no words of survivorship. In the United States a power given to executors or trustees, as such, to sell real estate, may be exercised so long as a single donee survives; and so if land is given to trustees to sell, the trustees are joint tenants, and the survivor will have the freehold, and may exercise the power of sale, it being a power coupled with an interest In many states, statutes have been enacted which authorize the survivor of several executors to execute even naked powers given by will. A grave question has arisen upon these statutes, whether they extend to the execution of discretionary powers given to trustees, or whether they are confined to powers connected with the administrative functions of executors. In general, it would be a question as to the intention of the donor, whether the powers given should be executed by all the trustees

named, or any one or more of them; or whether it was the intention that successors or others connected with the trust should have and execute the powers conferred; in other words, the question is, whether the donor reposed a personal trust and confidence in the trustees appointed, or whether he reposed the power in whomsoever might in fact fill the office of trustee." In the case at bar, the power is given to "my executors hereinafter named," and by the above section, 499 of Perry on Trusts, the power survived and could be exercised by one. See, further, authorities cited elsewhere.

Tiff. & Bull. 759; 3 Bibb, 350; 7 Dana, 8; and 6 Rich. Eq. 22, are cited as holding that, where there are several donees of the power, and they are to exercise judgment and discretion, all must act or the power ceases. Upon this point Tiff. & Bull. 759, merely say: "It has been laid down that, where the will gives no positive directions to sell, but refers the power to sell to the judgment and discretion of the executors, all must join in the sale. But, in New York, it does not seem to be necessary that all should qualify, or act, though the powers of the executors are discretionary." The distinction sought to be adopted in these cases, based upon discretionary powers, requiring the exercise of judgment, originated with 3 Bibb, *supra*, and has been followed in 7 Dana, 8; and in 24 Miss. 375.

The rule in 3 Bibb, however, was criticised, explained and limited, if not seriously questioned, in 2 Dana, 75, while, in 1 Comst. 341, it was successfully overthrown as an authority, showing that case to have been without precedent in England or in this country, and wrong in principle. I hold, however, that it has no application to the case at bar. Mallet v. Smith, 6 Rich. Eq. 12, cited in support of 3 Bibb, was this: The testator, by his will, made certain provisions for some of his slaves, which were void under the statutes of that state. He bequeathed to his wife $2,000, made

her one of his residuary legatees, and then provided as
follows: " Should any of my legatees, under this my
will, complain or express any dissatisfaction with any
disposition of my estate, I direct and empower my ex-
ecutors, in their discretion, to revoke any and all
legacies such complaining legatee or legatees might
have been entitled to, and to dispose of the same be-
tween my other legatees, as to my executors may seem
proper." He appointed three executors, two of whom
renounced and one qualified. His sister filed her bill,
calling in question the validity of the provisions made
for the slaves; and thereupon the acting executor, alone,
executed a deed, revoking the legacies to the sister, and
assigning them in certain proportions to the other lega-
tees. And such is that case. It was correctly held,
that the power could not be exercised by the acting
executor alone, the other two, who were still living,
not joining with him, upon the ground stated by the
court, as follows: " Renunciation of the office of the ex-
ecutor implies no renunciation of a power not pertain-
ing to the office of executor not connected with the
administrative functions of an executor. A power to
revoke a legacy and make a new distribution, is quite
independent of the office of executor; it might well be
conferred upon persons named as executors who do not
act in the general administration of the estate; and, in
effect, it delegates the office of testator, quite independ-
ent of the execution of an existing will." And the
rule was declared that, at common law, a joint power,
altogether independent of the office of executor, conferred
by will upon several executors, must be executed by
them all, even though some have renounced. If the
law is thus correctly expounded, it follows, in the case
at bar, that if the sale and conveyance by Lane was an
act pertaining to the administrative functions of an ex-
ecutor, then the sale and conveyance by him was valid
without the co-operation of Lum. If the sale was inde-

pendent of the office of executor, the execution of the power by Lane and Lum was valid.

10 Peters, 161, is cited for the rule that authority given to executors to sell is a personal trust, and must be strictly pursued; and if they transcend their authority in any essential particular, their act is void. That was a case arising out of the sale of personal property by an administrator under the orders of a probate court. The case, therefore, requires no comment, as it is not applicable to the case at bar.

4 Bibb, 307, is given for the rule that a will authorizing executors to sell and convey land confers only a naked authority, and gives neither a right of property nor a right of action; and 3 Zabriskie, 448, for the doctrine that a mere direction to executors to sell land is a naked power, and gives no estate or interest in the land whatever, and, until the power is executed, the lands descend to the testator's heir-at-law. There is no question of the correctness of these rules, but they have no application to the case at bar, for the reason that the will in question is not of the class of mere naked powers. Here, possession, control, management, authority to lease, collect rent, advances to the children, power of sale, investments and final division are given the executors.

In Shelton v. Homer, 5 Met. 462, referred to in support of the theory of the complainants, the testator authorized his executors, or such of them as should take upon themselves the probate of the will, to sell all or any of his real estate, not specifically devised, by public auction or private contract, at the discretion of the executors. The two executors named in the will accepted the trust. Afterwards, one of the executors resigned his trust, and purchased of the other real estate of the testator. The court say: " We are of the opinion that the term ' executors,' as here used, relates to those persons who actually become such by taking upon them-

selves the office, and would have been satisfied if one only of the appointed executors had been qualified to act; that where all renounce but one, such one has the power and authority in himself, as if he alone had been named as executor. See St. 21 Henry VIII, ch. 4; Bonifant v. Greenfield, Cro. Eliz. 80. If, therefore, the defendant had originally renounced the executorship, we see no reason why the sole executor might not have executed the power, it being conferred on the executors by virtue of their office. When executors individually named in connection with, and who are to execute, the power, there all who are mentioned are required to execute it, to give it validity. But where the term used is simply that of executors, it applies to those who are such, *virtute officii.* Sharp v. Sharp, 2 B. & A. 405; Zebath v. Smith, 3 Bin. 73; Jackson v. Ferris, 15 Johns. 346; Pow. Dev. 297. But the present is not the case of a renouncing executor, but of one who has taken upon himself the trust, has exercised it in part, and then resigned his office. Doyle v. Blake, 2 Scho. & Lef. 230; 1 Williams on Ex'rs, 149. In relation to the authority itself, conferred by the will, we consider it a mere naked power, not coupled with a trust. The mansion estate is not specifically devised, and the authority given to the executors to sell is discretionary; such a power as the court could not compel them to execute for any purposes required by the will." The point and force of this decision, as an authority for the view which I take of the case at bar, rather than for the opposite theory, will be appreciated when there was no trust connected with the sale, no purpose of the will for which it was made, no duty required in addition to the sale; but that it was a mere naked power of sale; beyond a sale, no duty being required of the executors. The court further say: "The general rule undoubtedly is, that naked powers are to be construed

strictly, while those which are coupled with a trust are to receive a liberal construction."

Kent, vol. 4, p. 325, marg., is also referred to in connection with the foregoing, and he says, is this: "A naked authority without interest, given to several persons, does not survive; and it is a rule of the common law, that if the testator, by his will, directed his executors by name, to sell, and one of them died, the others could not sell, because the words of the testator could not be satisfied. Co. Litt. 112 *b*, 113 *a*, 181 *c*; Dyer, 117; 2 Johns. Ch. 19; 10 Pet. 533; 1 Curtis, C. C. 479. There are, however, some material qualifications as to the rule. The statute of 21 Henry VIII, c. 4, declared that the executors who accepted their trust might sell, though one or more if the executors should refuse to act. 2 Dev. & Bat. 262; 3 Munf. 345; 1 Dev. & Bat. 389; 3 Dana, 195; 29 Penn. St. 211; 2 Sanf. 512; 1 Seld. 136; 30 Me. 523; 8 Barr. 417; 1 Comst. 341; 19 N. Y. 445. This statute has probably been generally adopted in this country, and it has been re-enacted in the successive revisions of the statute laws of New York. The provision is continued by the New York Revised Statutes; but in other cases of powers granted to more than one person, it is provided that, 'where a power is vested in several persons, all must unite in its execution; though, if previous to such execution, one or more should die, the power may be executed by the survivors or survivor.' The result of the English cases is, that where a power is given to two or more persons by their proper names, and they are not executors, or where it is given to them nominative as executors, and the word 'executors' is used as a mere *descriptio personarum*, the power does not survive without express words; but where it is given to several persons by their name of trust, as to my executors or trustees, or to several persons generally, as to my sons, it will survive so long as the plural number remains.

3 Bin. 39; Sug. Pow. 159; 1 Bosw. 214. If the execu-
tors, having power to sell, are vested with any interest,
legal or equitable, or are charged with a trust relative
to the estate, and depending on the power to sell, in
these cases also the power survives." 3 Atk. 714; 2
P. Wm. 102; 2 Dana, 79; 8 Humph. 563; 2 Johns.
Ch. 252.

In 2 Johns. Ch. 1, the learned chancellor who deliv-
ered the opinion therein, says that the "authority to
lease, and this interest in the subject itself, must be
sufficient to exempt the power from the character of a
mere naked authority to a stranger." It is not neces-
sary, he says, "that the interest coupled with the
power, should be a legal interest. An equitable
interest is sufficient, and is regarded in this court as the
real interest; nor does the character of the power
depend on the quantity of interest." Referring to the
fact that the will created a trust, he says: "Either of
these grounds are sufficient to support the sale made by
the surviving executor," and he therefore decided it to
be a good sale.

A power to sell coupled with an interest or trust
survives to the surviving executor. So also, if all the
trustees or executors in such a case decline to act except
one. 5 How. (U.S.) 233. Mr. Perry, p. 372, says: "An
executorship survives, for the joint executors have an
interest in the estate." Adams v. Buckland, 2 Vern,
514, was the case of an administration granted to two,
one dying, the question was, whether the administration
ceases; whether like a letter of attorney to two, and
one dies, the authority ceases. *Held,* the office survives.
Where a power of sale is given to several executors,
*virtute officii,* or is given to them by name, but is coupled
with an interest or trust, the power may be exercised
by the survivor." Hill on Trustees, 735, note; 2 Exch.
580; Tiff. & Bul. 757. And Mr. Lewin says, "the
principle that trust powers survive with the estate is as

old as the time of Lord Coke. A power coupled with a trust survives, though the trust be in no way beneficial to the trustee. 2 Humph. 367; 10 Pet. 564; 3 McCord, 29; 2 Dana, 79; 30 Me. 523; Willard on Real Estate, 259; 3 Ohio, 321; Tiff. & Bul. 757.

That a charge of debts upon real estate creates a trust, see Jeremy, 96, 98, 102, 103; 1 Lead. Cas. Eq. 109; 2 Story Eq. Jur., ch. 29; Dart on Vendors and Purchasers, 292. "In fact" says Dart, "as respects debts, a charge of them upon the estate is held to amount to a trust for sale. And see also Adams' Eq. 490, *et seq.*; Hill on Trustees, 223, 521; Tiff. & Bul. 94; and cases cited elsewhere herein.

As to the estate which an executor takes under a will, O'Hara, 179, says "a direction to pay debts gives a power of sale, but not an estate." Ib. 210. Mr. Lewin, 520, says: "Estates in trustees will be indulged in favor of the trusts by implication." In Brewster v. Striker, 2 Comst. 19, the testator devised his estate, in terms, to his grandchildren and their heirs for ever. The executors were not to sell, but were to lease until the youngest grandchild attained the age of twenty-one, when the estate was to be divided. *Held,* that the executor took, by implication, the legal estate during the lives of the grandchildren. There was no devise in 9 Gratt. 584, but the legal estate was held to be in the executors by implication, and the court say, in that case, what may be said in this: I think it is difficult to read the will without being satisfied that the testator intended: 1st. That the heirs should take no interest in the real estate, until they attained twenty-one; 2d. That the executors should take immediate possession; and, 3d. That they should hold it until their heirs were twenty-one. Hill on Trustees, p. 358, says, "a mere charge of debts or legacies on real estate will not of itself, vest the legal estate in the trustees unless they are also expressly directed to pay them," etc. And,

Mr. Perry, 288, adds to this remark of Mr. Hill, " un
less there is some other implication, that they are to
exercise an active trust for the purpose." Surely there
were active trusts in the will before us. 2 Washb.
on Real Property, states this rule thus: " If the trust
be passive, the estate vests in the *cestui que trust ;* if ac-
tive, if he have an active duty to do, which requires
him to hold the legal estate for a term of time, he will
be considered as seized thereof accordingly. 2 Jarm.
Ch. 35, and notes, pp. 150, 151; Willard on Real Prop-
erty, 506; Hawkins on Wills, 140; 1 Sug. 173; Hill
on Trustees, 358; Perry, 288; by implication, Lewin,
250. And Mr. Lewin makes this significant statement,
that " a court of equity considers devises of trusts as
distinct and substantive devises, standing on their own
basis, independent of the legal estate, or of one another;
and the legal estate is nothing but a shadow which
always follows the trust estate in the eye of a court of
equity. And see Hill on Trustees, 357, 358, notes, etc.
Possession with a power of sale, in 10 Paige, 205, was
held to be a power coupled with an interest. At com-
mon law, possession and freehold were convertible
terms, and a conveyance transferring the possession was
considered as transferring the fee.

Williams on Real Property, 97, has this significant
and authoritative remark : " Some debtors, however,
impelled by a sense of justice to their creditors, left
their lands to trustees, in trust, to sell for the payment
of their debts, or, which amounts to the same thing,
charged their lands, by their wills, with the payment
of their debts." Ib. 216; Hill on Trustees, 541, 544;
29 Penn. St. 265, etc.

It has been argued that there is a distinction between
a devise of an estate in trust to be sold, and an estate
charged in a trustee's hands for the payment of debts
and legacies. We think there is no ground for this
distinction, either in principle or upon authority. 13

Pick. 401. And it was said by Ranney, J., in 4 Ohio St. 445, " that no distinction is to be taken between estates devised in trust, or those only charged with the payment of debts or legacies." 1 Hilliard on Real Property, 468, says: "It is immaterial whether land is expressly given in trust, or merely charged with debts." Ib. 718 (note). " A distinction appears to have been taken at one time between the effect of a devise in trust to pay debts, and a mere charge of debts on the estate, with regard to the powers of trustees to sell the property for the discharge of the debts." 1 P. Wm. 430. " This distinction, however, has been long since overturned." 2 Atk. 41; 2 Sug. (9th ed.) 38. See note 1 to Hill on Trustees, 537; 1 Williams on Executors, 578, et seq. A charge creates a trust. Shepherd v. Sutwidge, 8 Ves. Jr. 26.

The will in this case is as though it had read: " I give my executors hereinafter named full and complete power, as I myself possess, after my decease, to dispose of all my estate, real, personal and mixed, in the way and manner which they may think best calculated to carry into effect all the purposes specified in this my last will and testament," which in 17 Ohio, 171, was held to be a power coupled with an interest. A power of sale was implied on similar words in 2 Ohio, 358. Williams v. Otey, 8 Humph. 563, was a deed of trust for the payment of debts. Held, a power of sale was necessarily implied. " But, although there may be no specific direction for the sale of the estate, but only a trust to raise or pay debts, or a devise subject to or charged with debts, or the debts and legacies being first deducted; in all these cases, the trustees may properly raise the required amount by sale or mortgage, without waiting for a decree." Hill, 537. " If a person by will direct his realty to be sold, or charged with debts, etc., the legal estate may be decreed to the heir, or it may pass to the devisee; but the court will view

the declaration as an implied declaration o ' a trust, and will enforce the execution of it against the legal proprietor," Lewin, 198. A power of sale may be express or implied. No precise form of words is necessary for creating such a power. Powers are mere declarations of trust, and any words, however informal, which show an intention to create such a power, will be sufficient for the purpose. Hill on Trustees, 732, 733.

The general doctrine of the power of a testator by will to charge his estate is fully recognized in Sumner's notes .to Ves. Jr.; Tiff. & Bul. 95, 305 ; 2 Lead. Cas, Eq. 251, 297, 305 ; 1 Story Eq. Jur. 552 ; 2 Hilliard on Real Prop. 718, 847 ; Willard's Real Estate, 521 ; 16 N. Y. 262 ; 1 Rawle, 386 ; 18 Eng. Ch. 265 ; 1 How. (U. S.) 134 ; 9 Pet. 461 ; 10 ib. 332 ; 7 Paige, 421 ; 1 Keen, 709, note 3 ; Jarm. 363 ; O'Hara, 237 ; Hawk. on Wills, 134 ; and lands devised or charged for the payment of debts are not affected by modern statutes. Hill on Trustees, 529, etc.

As to the words which will create a charge of debts on real estate, see 2 Story's Eq. Jur. 1246, abundantly embracing the case at bar.

Mr. Williams, who is a very accurate and a very conscientious writer, says, in his work on real property, p. 216, that while opposed on principle to the doctrine, yet he concedes the. rule in modern cases, that " if a testator charges his. real estate with the payment of his debts, such a charge gives by implication a power to his executor to sell his real estate for the payment of his debts." And he. says, " recent statutes have been passed, authorizing executors and trustees to sell under a will, in these cases, in accordance with these modern decisions." And Mr. Willard, an eminent judge and writer of New York, in his treatise on the duties of executors, has this most pregnant statement on p. 328. If a testator charges the payment of his debts on his real estate, by his last will and testament, the surro-

gate has no jurisdiction to order a sale of the lands so charged. The remedy of the creditor, if the executor declines to sell or pay, is in equity. If directions in the will require a sale, it is equivalent to a direction to sell. 20 N. J. Eq. 377; 1 Lead. Cas. Eq. 647; and note to Fletcher v. Ashburner. And the power of the trustee is equal to the duty required, and he may enforce the trust. Hill, 541, 544, and notes, etc.

It has been stated in support of the position of the appellants, that " in the United States, both real and personal property are liable for the debts of deceased, and no valid trust can be created by will for the payment of debts in either personal or real estate. The statutes of the several states point out how estates shall be administered for the payment of debts. Creditors in all cases have the right to demand payment according to the provisions of the statutes. Thus, trusts, charges, or other directions in wills for the payment of debts have no legal operation, so far as creditors are concerned." Perry on Trusts, 408, § 559, is referred to as the authority for this statement. To the extent that testamentary dispositions of property are subject to the rights of creditors, Mr. Perry is correctly quoted, but no further. Subject to the rights of creditors, a testator may empower his executor to administer his estate, without application or reference to the courts, from first to last, and such is the doctrine of Mr. Perry, and of every other writer and adjudication in this country and in England. "The statutes of the several states" do, indeed, "point out how estates shall be administered for the payment of debts;" but when creditors are provided for, these statutes have no application, and may be wholly ignored by the executors when authorized by will.

If the rule above stated is intended to declare, that, undisturbed by creditors, an estate cannot be conducted by an executor, without reference to the probate court,

when so empowered by the will, the declaration stands opposed to every text writer, and to every adjudication in England and in this country from the earliest date to the present. It would be, not only without precedent, but contrary to reason, practice and justice.

It has been further asserted in behalf of the complainants, that " derivative powers at common law are of two classes : A power coupled with an interest and a naked power. A power coupled with an interest is a right or authority to do some act, together with an interest in the subject on which the power is to be exercised. A power of this class survives the person creating it. A naked power is a right or authority disconnected from any interest of the donee in the subject-matter. And it is a principle of the common law, that where a power given to several persons is a mere naked power, not coupled with an interest, it must be executed by all, and does not survive ; but when the power is coupled with an interest it may be executed by the survivor." I have before referred to the authorities which hold that a power coupled with a trust survives equally with one coupled with an interest. For illustrations of naked powers, *vide* 2 Dana 75 ; 3 McCord, 29 ; 8 Ad. & El. 569, 905 ; 1 Sug. 189, *et seq.;* Willard on Real Prop. 248 ; 7 Wend. 47 ; 2 Hill, 569 ; 26 Barb. 224 ; 6 Cow. 651 ; 7 ib. 187 ; 3 Redf. on Wills, 137, etc.

As to the application of powers at common law, Crabbe says : " Writers have not been entirely agreed in their definition of a power, and it is to be distinguished both from a trust and an interest. The revisers of the New York statutes said in their introduction to the Revised Code, that " the law of powers is the most intricate labyrinth of our jurisprudence." Judge Willard, in his work on real estate, 248, says : "Powers are of two sorts ; first, such as owe their origin to the statute of uses, now generally regulated by statute ; and secondly, such as existed at common law, being simple

powers of attorney." Most assuredly the power in the case at bar is not of the latter class. So far from it, the will confers powers, duties and trusts in almost every line. Lord Eldon says, "there is not only a mere trust, and a mere power," and that "there is also known to the court, a power with the party to whom it was given is interested, and is required to execute." Tiff. & Bul. 210. Mr. Perry (Trusts, 227), says: "Courts have distributed powers into mere powers, and powers coupled with a trust, or powers which imply a trust." See also p. 467. I do not assent to the correctness, nor to the application of the rule above quoted, as to "derivative powers."

Upon this whole case, I have reached, substantially, the following conclusions:

1. That, subject to the rights of creditors, the right and power of testamentary disposition of property, and the rules of construction of wills, remain unchanged and unaffected by the provisions of the code of this state. Hill on Trustees, 529, 751; Perry on Trusts, 512, 738; 16 Pick. 111; 1 Seld. 136; Willard on Real Prop. 470, and cases cited.

From the American authorities, I deduce the rule that real estate can be reached for the payment of debts in all cases, whether charged by will or not. If charged, and the executor neglect his trust, the courts have power to enforce execution of it; if not charged, provision is made through the probate court. And it is appropriately said by Mr. Perry, § 560, that "while the creation of a trust by will, in personal or real estate, is wholly without legal operation, so far as creditors are concerned, it may be of the utmost consequence, as between heirs, legatees, devisees, and other persons interested in the estate."

2. That this will is not of the class creating a mere charge, " simplicitur," to pay debts, because it directs the payment of debts "as soon as possible," the testator

knowing himself to be largely in debt; and this clause of the will must be taken in connection with the general power to control, and with the whole will, with its powers, duties and trusts. Hence the power of sale. 1 Sug. 173, *et seq.* and notes; ib. 189, 200, 206, 464; 2 ib. 405, etc. For an illustration of a mere charge "*simplicitur*" to pay debts, see the will in Powell v. Robins, 7 Ves. Jr. 208.

3. Neither is this will one which confers only a "naked power." It confers a power coupled with trusts, and active trusts, if not an interest; but the power coupled with a trust brings this within the class of cases wherein a sale by one executor is authorized. In addition to other reasons herein given, this will confers more than a naked power, because it carries the possession, if not the fee, of the estate to the executor, with all the powers and duties of the testator himself. 3 Ohio, 321; 10 Cush. 575; 2 Met. 243; 1 Sug. 189, *et seq.*; ib. 193, 200, 205; 9 Gratt. 584; Hill on Trustees, 735, 766, 777; 2 Exch. 58; Tiff. & Bull. 757; 2 Washb. on Real Estate, 473, 614, 615; 3 Edw. Ch. 20; Perry on Trusts, 227, 467; Lewin. 440, *et seq.*; 4 Paige, 317; 43 Me. 206, etc.

4. The power of sale conferred by the sixth and seventh clauses of the will is ample. The power conferred by the sixth clause upon the executrix is conferred upon the executors by the twelfth. And these powers are independent of the condition, so that the purchasers took the title, freed of the necessity of looking to the application of the purchase money, under whichever clause the sale was made. 48 N. Y. 585; Hill on Trustees, 748, 787, *et seq.*; 1 Hilliard on Real Prop. 468; Willard's Real Estate, 262; 10 Penn. St. 265; Dart on Vend. 283, *et seq.*; O'Hara, 237; 1 Lead. Cas. Eq. 97; 1 Sug. 453; Williams on Real Prop. 217; 1 Hilliard on Real Prop. 467, 468, *et seq.*; 3 Redf. on Wills, 235, 568; Lewin, 362, 390; Perry, 740, 742; 6 Ohio, 114; 1 Gray, 569, etc. The re-investment required under the sixth

and seventh clauses of the will, was a subsequent condition, requiring time and deliberation, and a *bona fide* purchaser would not be affected by the non-performance.    Hill on Trustees, 748.

5. If the sale was by the executor, in virtue of his office, the sale by one was valid and effectual for the conveyance of the legal title.    2 Williams' Ex'rs, 1521; 1 Ohio, 358; 8 Porter, 380, 389; Willard's Ex'rs, 138; 3 Bin. 72; 1 Dev. & Bat. 390; 7 Dana, 7; 8 Gill, 423; 1 N J. Ch. 360, 361; 4 Denio, 404; 2 ib. 68; 15 Johns. 345; 3 McCord, 29; 1 Seld. 136; Taylor v. Morris, 1 Comst. 341, which entirely overthrows 3 Bibb; 14 Johns. 391; 4 Hill, 492; 30 Me. 523; 8 Humph. 563; 3 Edw. Ch. 20; 1 Sug. 185, note; ib. 199, 457; 2 Story Eq. Jur. 1062; Hill on Trustees, 737, 766; Perry on Trusts, 444, 447, 451, etc.

6. But if the sale was by them, as trustees, then the execution of the power is good, though one had never qualified as executor.    1 Penn. Dig. 1082, 1086; 8 Barr. 417;  Hilliard Real Prop. 835; 4 Sanf. 374; 2 Dev. & Bat. 390; 21 Wend. 430; 19 N. Y. 445; 5 Wend. 224; 9 Pet. 477; 8 Port. 386; 1 Lead. Cas. Eq. 129; 2 Humph. 367; 8 Penn. St. 423; 1 Gray, 567; 1 Penn. St. 184; 2 Dana, 79; 2 Paige, 195; 1 Sanf. 357; 3 Munf. 345; 4 ib. 332; 15 Wend. 610; 1 Sug. 185, 186, note; 194, 199, 457; 9 Gratt. 584, etc.

7. Under the second paragraph of art. 136, Rev. Code of 1857, p. 458, an implied power of sale is equivalent to an actual and express desire to be sold, and when manifest, it is as binding, effectual and obligatory upon courts, as though it were devised in terms for such purpose.    A court has no more right to deny a plain implication, than it has to deny a fact or admitted principle of law.    In short, there is no difference under this statute between an express devise of lands to be sold, and a power to sell by implication.    2 Story Eq. Jur., § 1131, and notes.    See the cases cited in this

opinion, and also 1 Bosw. 217, etc. And this being a beneficial statute, should be liberally construed. 4 Denio, 404, in which 3 Bibb, *supra*, is questioned and repudiated. 2 Denio, 69; 1 Ves. Jr. 499, etc. A charge is, in effect, a devise *pro tanto*. 1 Bosw. 217, and cases previously referred to.

8. The executors, in making the sale, having done what they would have been ordered by the proper court to do, must be sustained. Fraud is not charged, and mere inadequacy of price is not sufficient to invalidate their act. 9 S. & M. 357; 2 Story Eq. Jur., §§ 979, 1207; 1 ib. § 552; 2 Johns. Ch. 1; 1 Lead. Cas. Eq. 110; 9 Gratt. 584, etc.

9. And that upon the whole will, a sale under the second clause, to pay debts, was fully authorized; and herein it is a question of intention, not of particular intent; for the latter must prevail over the former (9 Paige, 107; Willard Real Prop. 504); nor of a construction based upon an isolated clause of the will, but upon the whole will. To my mind, those who have adopted the theory upon which the will is framed, have committed the error of isolating a single clause of the will, and applying thereto the rules applicable to a mere charge "*simplicitur*" to pay debts, and to mere naked powers which, in this case, have no application whatever in my judgment. It is, at least, a question of intention, and the only potent objection made to an implied power of sale upon the face of this will; the only indication in the will which at all impressed me as manifesting an intention opposed to an implied power of sale, is the devise to Mrs. Lane for life. But this difficulty entirely vanished when, on examination of the the authorities and precedents, numerous cases were observed wherein there was an absolute devise in fee and for life, yet the courts found, in other portions of the will, a power of sale by which the estates thus devised were defeated.

10. I agree with my associate that the purchase by Hornthal and Blakemore was in good faith, and this I hold to be a most important, if not a conclusive consideration, in arriving at a final result on the the merits of this case, as presented in the record.

11. Were this case to be sent back for further proceedings, and be returned here after a hearing on issue joined, I should probably agree with my associate in the rule of subrogation and the doctrine as to the repayment for valuable improvements placed on the premises by the purchasers. The latter subject is not new to me, having been fully considered in Learned v. Corley, 43 Miss. 687. Though that was a case at law, the whole subject was investigated, and the views of my associate in the case at bar were indicated by me in that case. But it is to be suggested, that these questions do not, and cannot, properly arise on demurrer.

The following are inserted as authorities which have been examined in this case, in addition to those already cited: 4 Gilm. 424; 1 Sug. 206; 8 Barr. 423; 5 Met. 462; 3 Paige, 420; Tiff & Bul. 209, 721, 753, and notes, 755, 757, 758; Hill on Trustees, 358, 537, 540, 552, 553, 740, 766; 1 Williams' Executors, 579; 2 Washb. Real Prop. 614, *et seq.*; Hilliard on Real Prop. 836; 2 P. Wm. 103; 18 Penn. 179; 2 Humph. 378; 30 Me. 523; 10 Pet. 564; 10 Paige, 205; 1 Ves. & B. 273; 2 Ves. Jr. 328; 3 Ves. 738; 2 Johns. 623; 8 Sim. 43; 10 ib. 393; 2 Ves. 314; 1 Phil. Ch. 85; 3 Ves. Jr. 550; 5 Ves. 359, note *a*; 7 ib. 209; 8 Russ. 108; 2 Y. & C. N. R. 301; Willard on Real Estate, 504; 1 Ohio 358; 9 Pet. 477; 8 Port. 386; 3 Barb. 376; 5 Mod. 98; 1 Salk. 228; 13 N. H. 521; 7 ib. 142; 21 Ala. 410; 26 ib. 431; 6 Mod. 14; 13 Pick. 491; 6 Gill. 516; 18 Eng. Ch. 266; 7 Ves. 321; 1 Williams' Ex'rs, 519, notes; 9 Ga. 55; 4 C. E. Greene 87, 121; 36 Ills. 293; 8 Hare 278; 55 Barb. 85; 52 ib. 413; 5 Cush. 454; 30 Vt. 458; 26 Ga. 302; 46 N. H. 423; 38 N. Y. 410; 9

Johns. 704; 2 Barb. 63; 4 Hill, 492; 26 Barb. 224; 43 ib. 421; 3 Redf. on Wills, 135, 138; 2 Denio, 61; 19 N. Y. 446; 12 Wheat. 498; 2 Sim. & Sta. 238; 1 Rawle, 408, 416; 2 Ves. 590; 1 Ves. Jr. 447, note; 2 Sanf. S. C. 374; 6 Mod. 36; 8 Barb, 18; 3 Ves. Jr. 545, notes and cases; ib. 114; Hill on Trustees, 517, 537; Willard's Ex'rs, 328, 329; 16 N. Y. 259; 2 Williams' Ex'rs, 581, 1541; 1 Roper 571; 2 Pow. Dev. 644; 2 Jarm. Wills, 372, 373, 495; 2 Story Eq. Jur., §§ 1060, 1061, 1062 *a*, 1063, 1064 *b*, 1064 *c*, 1245, 1247, 1247 *a*; Hawk. Wills, 153, 158, 282 ; Tiff. & Bul. 150, 483, 750, 753, 757; 2 Hilliard Real Prop. 10, 21, 25, 831, 834; 29 Miss. 72; 2 Mich. 531; 1 Lom. Ex'rs, 218, 361, 362; 6 Munf. 374; 8 Barb. 18; Lewin, 440, 448, etc.

The decree of the chancellor sustaining the demurrer and dismissing the bill should be affirmed.

[No conclusions having been reached by the court upon the questions presented, the decision of the Chancellor is, therefore, affirmed.—REPORTER.]